BAXTER HEALTH CARE, CORP.[1] *vs.* HARVARD
APPARATUS, INC.

No. 92-P-439.

Middlesex. May 13, 1993. - August 23, 1993.

Present: PERRETTA. GILLERMAN. & GREENBERG. JJ

*Arbitration*, Scope of arbitration, Award, Damages, Attorney's fees, Correcting error in award. *Interest*.

Arbitrators' award of preaward interest in a matter in which the arbitration agreement was silent on such interest was within their inherent power. [207]

A counterclaim raising new claims filed in an action to confirm an arbitration award was properly dismissed as beyond the purview of the proceedings under G. L. c. 251, § 15. [207-208]

Arbitrators' award of counsel fees in an arbitration proceeding was error and prohibited by the provisions of G. L. c. 251, § 10, where there was no agreement for the award of such fees. [208]

Where arbitrators were without authority to modify their award due to the failure of the party seeking clarification to comply with the express provisions of G. L. c. 251, § 9, the clarifying awards were a nullity [208-209]; furthermore, the failure of the clarification proceeding to be in compliance with the applicable commercial arbitration rules of the American Arbitration Association provided an independent ground for vacating the judgments confirming the award as "clarified" [209-210].

An action to confirm an arbitration award was remanded to the Superior Court for further proceedings. [210]

CIVIL ACTION commenced in the Superior Court Department on November 27, 1990.

Motions to vacate, confirm, and modify the arbitrator's award; to amend the defendant's counterclaim; and to dismiss the counterclaim were heard by *John J. O'Brien*, J., and

[1]Baxter Health Care, Corp., was substituted in this court for the original party, C.R. Bard, Inc. However, in the interest of clarity, all references to the lower court proceedings and to the arbitration will identify Baxter's predecessor, Bard, as the plaintiff.

*J. Owen Todd*, J., and separate judgments were entered by them.

*Franklin H. Levy* for the defendant.

*Teresa A. Martland* for the plaintiff.

GILLERMAN, J. After the parties settled a lawsuit by entering into an agreement which called for the purchase by the defendant (Harvard) of all of the plaintiff's inventory of infusion pumps and related items at a price to be determined by a formula, disagreements about the performance of the agreement arose, and the plaintiff (Bard) demanded arbitration by the American Arbitration Association (AAA) in accordance with an arbitration clause in the settlement agreement. That clause provided that arbitration by the AAA should take place in Boston, thereby conferring jurisdiction upon the courts of this Commonwealth to enter judgment upon the award, with venue in Suffolk County. See G. L. c. 251, §§ 16, 17. See also *Stancioff* v. *Hertz*, 10 Mass. App. Ct. 843 (1980).[2]

The record appendix does not include Bard's entire submission to the AAA, but it does include an "Attachment to

---

[2]Harvard argues (but fails to support the argument by adequate record references) that the Uniform Arbitration Act enacted in Massachusetts, G. L. c. 251, §§ 1 et seq., "is preempted by" the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., for transactions involving interstate commerce. The argument sweeps too broadly. The Federal Act "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp.* v. *Keating*, 465 U.S. 1, 10 (1984). Thus, assuming the Federal Act applies to this controversy, State law is not entirely displaced — only such laws as (i) affect the validity, enforceability and interpretation of the agreement to arbitrate, see *New England Energy, Inc.* v. *Keystone Shipping Co.*, 855 F.2d 1, 4 n.2 (1st Cir. 1988), or (ii) would in any way limit "the broad principle of enforceability" of private agreements to arbitrate. *Id.* at 6. We apply Massachusetts law throughout this opinion because neither the validity nor the enforceability of the arbitration clause is at issue in this case. As in *New England Energy, Inc.* v. *Keystone Shipping Co., supra* at 4 n.2, "[t]he issue before us is whether state law may supplement that [Federal] Act on matters collateral to the agreement to arbitrate." Indeed, the law of Massachusetts applied to this case enhances the "efficiency of the arbitral process . . . [and] does not directly conflict with a contractual provision." *Id.* at 7. See *Thomas McKinnon Sec., Inc.* v. *Cucchiella*, 32 Mass. App. Ct. 698, 700-701 (1992).

Demand for Arbitration." The attachment sets forth the principal issues to be arbitrated: the "nature of the dispute" — described as Harvard's refusal to purchase the inventory — and the "claim or relief sought," which includes the following: "Bard requests that Harvard be required to purchase Bard's inventory of Harvard line syringe infusion pumps at the cost of $266,310 plus interest thereon from September 18, 1989 . . . . In addition, Bard requests that attorneys fees and costs be assessed against Harvard."

The arbitrators issued their award on October 22, 1990. Harvard was required to purchase Bard's entire inventory of infusion pumps for which it was to pay $83,864, plus interest at the rate of twelve percent per year from September 18, 1989 (the closing date for the sale under the settlement agreement). Bard was required to deliver to Harvard the inventory and all appropriate documentation necessary for the approval of the pumps by the Federal Food and Drug Administration. The arbitrators also ordered Bard to pay Harvard $10,000 for attorneys' fees because of overreaching by Bard in asserting its claim against Harvard. The exchange of money for goods and documents was to take place within thirty days.

On November 27, 1990, Bard filed a motion in the Superior Court to vacate that part of the award that allowed attorneys' fees and to confirm the balance of the award. See G. L. c. 251, § 15. Harvard answered, including a counterclaim alleging violations of G. L. c. 93A by reason of Bard's "entire course of conduct."

Meanwhile, the parties found fresh cause to dispute. Harvard construed the award to mean that it was entitled to receive all the documentation and obtain FDA approval of the documentation before it was obliged to pay the purchase price. Harvard also asserted that if the number of units delivered differed even slightly from the precise number stated in the arbitration award, it was under no obligation to purchase any units. Bard disputed this interpretation.

On December 20, 1990, almost sixty days after the delivery of the award of the arbitrators to the parties, and while

the Superior Court proceedings were pending, Bard, in an apparent effort to resolve the continuing dispute, wrote the arbitrators seeking a clarification of their award. Harvard objected to any further proceedings by the arbitrators, but on January 11, 1991, the arbitrators issued a "clarification" which (i) established that the inventory "may have a 10% quantity tolerance so as to not make exact counts a reason for noncompliance . . . [with] this judgment," and (ii) that the required documents were to be delivered concurrently with the inventory and without regard for the adequacy or completeness of the documentation. Harvard again protested, and the arbitrators, again without a hearing, repeated their clarification on February 11, 1991.

The parties then continued their dispute in the Superior Court until a judgment was entered on April 25, 1991, and amended on October 23, 1991, vacating the award of counsel fees, confirming the balance of the award as clarified by the arbitrators on January 11, 1991 and February 11, 1991, denying Harvard's motion to amend its counterclaim and to dismiss the action, and allowing Bard's motion to dismiss Harvard's counterclaim. Harvard appealed.

1. The judgment was correct in confirming the arbitrators' award of interest on the payment due Bard at the rate of twelve percent per annum from the original closing date. Cf. G. L. c. 231, § 6C. The arbitration agreement is silent on the point, but the award was within the inherent power of the arbitrators. See *Blue Hills Reg. Dist. Sch. Comm.* v. *Flight*, 10 Mass. App. Ct. 459, 471-472 (1980) (affirming an award of preaward interest). "The right to interest involves questions of fact and law that are within the purview of the arbitrators." *Id.* at 472, quoting from Eager, The Arbitration Contract and Proceedings § 131 (1971). See also *Sansone* v. *Metropolitan Property & Liab. Ins. Co.*, 30 Mass. App. Ct. 660, 661-663 (1991) (court has no power to add preaward interest to an arbitration award).

2. The dismissal of the counterclaim (as well as the denial of Harvard's motion to amend its counterclaim) was not error. General Laws c. 251, § 15, authorizes only the "making

and hearing of motions" with respect to the arbitration proceedings; it does not authorize or contemplate that such proceedings may provide the occasion for the assertion of new claims not part of the arbitration proceedings sought to be enforced. Harvard cites no authority for its position, and we know of none.

3. The award of counsel fees by the arbitrators was error, whether one applies Massachusetts or, as Harvard argues, Federal law. See note 1, *supra.* In the absence of an agreement to award fees, the award of fees is prohibited by G. L. c. 251, § 10.[3] This avoids encumbering the "arbitration procedure by appending to it any of the incidents of litigation. . . ." *Floors, Inc.* v. *B.G. Danis of New England, Inc.,* 380 Mass. 91, 96 (1980). See also *Raytheon Co.* v. *Computer Distribs., Inc.,* 632 F. Supp. 553, 560 (D. Mass. 1986) (award excluding attorneys' fees is consistent with the policies promoted by the Federal Arbitration Act).

4. The judgment confirming the award of the arbitrators, as clarified on January 11, 1991, and February 11, 1991, was in error.

We start with the basic principles that "an arbitrator is without power to modify his final award except where the controlling statute or the parties authorize modification . . . ," *Ciampa* v. *Chubb Group of Ins. Cos.,* 26 Mass. App. Ct. 941 (1988), and that G. L. c. 251 was designed "to further the speedy, efficient, and uncomplicated resolution of business disputes with very limited judicial intervention or participation." *Marino* v. *Tagaris,* 395 Mass. 397, 400 (1985), quoting from *Floors, Inc.* v. *B.G. Danis of New England, Inc.,* 380 Mass. 91, 96 (1980).

The scheme of c. 251 is consistent with these principles. The court can vacate or modify the award of an arbitrator only upon the narrow grounds described in §§ 12 and 13, and an arbitrator can modify, correct or clarify his award

---

[3]While Bard, in its submission to the arbitrators, demanded that it be paid its attorneys' fees, the record does not disclose that Harvard agreed that the prevailing party would be entitled to attorneys' fees.

only within the limits and upon the conditions described in § 9.

If a party, acting under § 9, seeks to modify or correct an award, application to the arbitrator must be made within twenty days of the delivery of the award; but if proceedings to confirm, modify, or vacate an award are pending in the Superior Court, only the court may make the submission to the arbitrator, and it may do so without regard to the twenty-day limitation. See *Ciampa* v. *Chubb Group of Ins. Cos., supra* at 942. Whether the submission is by the court or by a party, a modification or correction is permitted only (i) if there is an evident mistake or miscalculation, (ii) if the award was imperfect in a matter of form, not affecting the merits of the controversy, or (iii) for the purpose of clarifying the award. G. L. c. 251, §§ 9 & 13. See *Trustees of Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.,* 363 Mass. 386, 394 (1973).

Here Bard, purportedly seeking clarification of the award under the provisions of § 9, failed to comply with its express provisions by (i) applying directly to the arbitrators for a clarification of their award during the pendency in the Superior Court of their motion to confirm the award and (ii) submitting the application for clarification beyond the statutory limit of twenty days from the delivery of the award. If "(i)" is not enough to invalidate the clarifications of January 11, 1991, and February 11, 1991, "(ii)" most certainly is. See *Trustees of Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy., supra* at 395. The result is that the two clarifying awards are a nullity, and that portion of the judgment which confirms the award as clarified must be reversed.

The commercial arbitration rules of the AAA, which are included in the record appendix, reinforce the result we reach. The rules include the requirement of notice to the parties of the date, time and place of the hearing (rule 21); persons having a direct interest are entitled to attend hearings (rule 25); direct communication between a party and a neutral arbitrator is prohibited (rule 29); upon completion of the introduction of evidence the hearings are closed (rule 35);

hearings may be reopened, but only *before* the award is made (rule 36); and the award shall be in writing, signed by the arbitrators, and delivered to the parties (rules 42 and 45).

We find nothing in the rules of the AAA that permits the arbitrators, without a hearing, to reopen an award and modify or "clarify" its contents upon the request of one party and over the objection of the other party. Since it did not consent, Harvard has been unfairly deprived of its right to be heard by the arbitrators, and the "clarification" of the award must be vacated for this reason as well. See G. L. c. 251, §§ 5 & 12(*a*)(4).

The analysis ends by returning to the point of beginning: the original award of the arbitrators is final unless the court, upon the application of a party under § 9, finds that what the applicant seeks is a clarification of the precise meaning of the original award, see *Harvard Community Health Plan, Inc.* v. *Zack*, 33 Mass. App. Ct. 649, 651 n.2 (1992), and thereafter makes a submission to the arbitrators seeking the clarification identified by the court. If there is such a submission, the arbitrators shall then hear arguments of counsel with regard to the desired clarification, and announce the award, with or without an amendment.

The case is remanded to the Superior Court. The parties shall have thirty days from the date of the rescript to apply to the Superior Court for a submission by the court to the arbitrators for clarification of the original award dated October 22, 1990. The allowance of the application is within the discretion of the court, and may be upon such conditions as the court orders. See G. L. c. 251, § 9. If no such application is made, the court shall forthwith vacate only that portion of the original October 22, 1990, award concerning the award of attorneys' fees and shall confirm the remainder of the award. The orders dismissing Harvard's counterclaim and denying Harvard's motion to amend its counterclaim are affirmed.

*So ordered.*