Hinkle, J.
Plaintiff Donald R. Fisher (“Fisher”) seeks to vacate a substantial portion of an arbitration award made on December 4, 1995 which requires him to pay $16,730.88 as his share of the defendant partnership’s operating deficits and to pay the defendant’s attorneys fees and costs incurred in the *571 arbitration. The plaintiff seeks to confirm the award insofar as it requires the partnership to pay him $125 in administrative fees and expenses. The defendant has moved to confirm the award in its entirety.
The matter is before the Court on cross-motions for summary judgment. After a hearing on May 21, 1996, the cross-motions for summary judgment are allowed in part and denied in part.
BACKGROUND
The relevant factual background is substantially undisputed. From 1969 until 1994, Fisher and his partners — David Bovarnick, Jerry Levin, and Charles Shaw — were the shareholders, officers and directors of First Equity, a real estate development and management company headquartered in Needham, Massachusetts. The ownership interest of each was 25 percent. Historically, First Equity earned its revenues through the management of properties which had been owned predominantly by Fisher and his three partners.
In recent years, the partnership grew acrimonious, culminating with Fisher filing a law suit in July 1991 in Norfolk Superior Court against his partners and First Equity. As a result of this litigation, the parties entered into a Settlement Agreement on June 29, 1994.The Settlement Agreement accomplished many objectives, including dismissal of all pending litigation, transfer among the parties of various, but not all, of the jointly owned properties, retention by First Equity of management of the remaining jointly owned properties, removal of Fisher as an officer, director and shareholder of First Equity, and in the event of any future litigation between the parties, a provision for the prevailing party in court to obtain reimbursement for attorneys fees and expenses from the losing party.
One of the remaining jointly owned properties is Brook Village West, a New Hampshire general partnership,[1] which holds title to an apartment complex known as Salem Crossing, located in Salem, New Hampshire. The general partners of Brook Village West are David Bovarnick, Jerry Levin, Charles Shaw and the plaintiff. Each partner has a 25 percent ownership interest. Brook Village West continues to be managed, as it has since its inception, by First Equity.
After the Settlement Agreement, when Fisher no longer enjoyed ownership interest in First Equity, a disagreement arose concerning Fisher’s alleged failure to contribute to “operating deficits” incurred by Brook Village West. Fisher argued that he was not liable under the partnership agreement for these deficits. The partnership argued that Fisher was liable, and that Fisher was now obligated to make payments to fund these deficits whereas before the Settlement Agreement these payments were subtracted from Fisher’s First Equity shareholder distributions.
Upon Fisher’s repeated refusals to make these payments, the Partnership brought suit against Fisher in June of 1995 in New Hampshire Superior Court. On July 26, 1995, Fisher exercised his right under the partnership agreement to have the dispute heard by a single arbitrator in the Boston office of the American Arbitration Association (“AAA”).[2] Shortly thereafter, the New Hampshire action was voluntarily dismissed without prejudice.
The Partnership’s claims were heard by an arbitrator, attorney N. Ronald Silberstein, on November 9-10, 1995. On December 4, 1995, the arbitrator issued his award without an opinion or findings of fact. The award, in relevant part, required Fisher to pay the partnership $16,730.88 and its reasonable attorneys fees and costs for the arbitration, required the partnership to pay Fisher $ 125 for administrative fees and expenses, and required that these payments be made in 45 days.
On January 2, 1996, Fisher commenced this action to vacate the award against him. On January 24, 1996, Fisher amended his complaint to confirm the award insofar as it required his partners to pay him $125. The Partnership filed a counterclaim to confirm the award. Both parties subsequently moved for summary judgment.
DISCUSSION
This case concerns a New Hampshire agreement which is controlled by a New Hampshire choice-of-law provision.[3] It is undisputed that New Hampshire law controls the issue of liability under the agreement. The defendant argues that the decision to arbitrate in Massachusetts necessarily and predictably confers jurisdiction upon this Court to confirm the award, and thus the Massachusetts Uniform Arbitration statute determines the judicial standard of review of the arbitrator’s decision. The plaintiff argues that although the arbitration took place in Boston, the choice-of-law provision requires that New Hampshire law control. He argues that Boston was the chosen arbitration site merely because the partners lived in the Boston area and because the AAA has no New Hampshire office.
The standards for reviewing an arbitration award differ between these states. Unlike Massachusetts, New Hampshire has not adopted the Uniform Arbitration Act. While New Hampshire has enacted its own arbitration statute, N.H. Rev. Stat. Ann. §542,[4] this statute authorizes a more severe standard of judicial scrutiny than does Massachusetts. For example, the New Hampshire arbitration statute provides that an arbitration award may be modified if it is the product of a “plain mistake.” N.H. Rev. Stat. Ann. §542:8.[5] Under this “plain mistake” standard, an arbitration award may be vacated if “the arbitrators were mistaken in point of law . . . [and] the court... is clearly satisfied that they would not have made such an award had they known what the law was.” N.H. Insurance Co. v. Bell. 121 N.H. 127, 129 (1981). An award may also be vacated when it is held that an arbitrator *572 “misapplied the law to the facts.” Turcotte v. Griffin, 120 N.H. 292, 293 (1980).
Conversely, Massachusetts stands squarely behind the principle that in the absence of fraud or other narrow circumstance, an arbitration award is to be judicially enforced, even if the arbitrator has committed errors in law or fact in arriving at its decision. G.L.c. 251, §12; Plymouth-Carver Regional School District v. J. Farmer & Company, Inc., 407 Mass. 1006, 1007 (1990); Geller v. Temple B’Nai Abraham, 11 Mass.App.Ct. 917, 918 (1981). Even a grossly erroneous decision is binding. Plymouth-Carver Regional School District v. J. Farmer & Company, Inc., 407 Mass. at 1007, citing Trustees of Boston & Maine Corp. v. Massachusetts Bay Transportation Authority, 363 Mass. 386, 390 (1973). This policy of limited judicial review reflects the Commonwealth’s strong public policy favoring arbitration as an expeditious alternative to protracted, expensive judicial proceedings for settling commercial disputes. Plymouth-Carver Regional School District v. J. Farmer & Company, Inc., 407 Mass. at 1007; Quirk v. Data Terminal Systems, Inc., 379 Mass 762, 767 (1980).
The Restatement (Second) of Conflict of Laws states in its commentary concerning the validity and effect of an arbitration agreement:
[T]he state whose local law governs the arbitration agreement will usually be the same as the state whose local law would be applied to determine other issues relating to the contract. This will not, however always be so . . . [E]ach case should be determined in accordance with the local law of the state which, with respect to the particular issue, has the most significant relationship to the transaction and the parties . . .
A possible example is where a contract whose principal elements are located in state X provides for arbitration in state Y. Here it may be that, although X is the state of most significant relationship with respect to most of the issues relating to the contract, Y is the state of the most significant relationship to the issue of arbitration . . .
Restatement (Second) of Conflict of Laws §218 cmt. b (1971) (emphasis added). Thus, because the forum state has the “most significant relationship to the issue of arbitration,” in most cases the forum state’s law should be applied in reviewing an arbitration award.
Recently, the Supreme Judicial Court endorsed the “most significant relationship” test, although in another context. In New England Telephone & Telegraph Co. v. Gourdeau Construction Co., Inc., 419 Mass 658, 660-61 (1995), the Supreme Judicial Court took a “functional approach” and determined “which State ha[d] the more significant relationship to the occurrence . . ."Id., citing Restatement (Second) of Conflict of Laws §142 comment e (Supp. 1989).
Applying this “most significant relationship” analysis, I am persuaded that when arbitration is conducted within the Commonwealth by mutual agreement, the Commonwealth has the most significant relationship to the parties with respect to the substance and validity of the arbitration decision. This view, that the law of the arbitration forum must be applied when reviewing arbitration awards, is generally supported by commentators. See, for example, Domke Comm Arbitration §40:01 at 513 (Rev. Ed.) (“Judicial enforcement of awards by the courts of the state in which the award is sought to be enforced” should follow the statutory provisions of that state’s arbitration act).
In Kearsage Metallurgical Corp. v. Peerless Insurance Co., 383 Mass. 162 (1981), the Supreme Judicial Court considered a dispute which closely resembles this case. The dispute involved a New Hampshire construction contract entered into by the plaintiff, a New Hampshire corporation, and a general contractor, for whom the defendant insurance company was the surety. No parly disputed that New Hampshire law controlled the issue of liability. The contract provided that all claims and disputes arising under the contract were subject to arbitration under the rules of the AAA, a provision the plaintiff invoked when it demanded arbitration be held in Boston. The defendant surety argued that the arbitration clause was not binding upon it and failed to attend the arbitration; the arbitrators made an award in favor of the plaintiff. When reviewing the decision of the Superior Court confirming the arbitration award, the Supreme Judicial Court applied New Hampshire law in its analysis. However, the Court did not hold that New Hampshire law controlled the standard for reviewing the award. Rather, it stated that New Hampshire courts were likely to find the defendant surety bound by the arbitration clause in the construction contract. Id. at 167 (“[W]e think that New Hampshire courts would follow the general principles outlined above and hold that... [a] surely who guarantees the performance of [a] contract will be” bound by an agreement to arbitrate).
In fact, the Court went on to apply the Massachusetts Uniform Arbitration Statute in its analysis of the defendant’s forum non conveniens claim. The Court held that since the arbitration clause merely required arbitration in accordance with the rules of the AAA, the parties could have arbitrated their dispute in any of the AAA’s regional offices. Id. at 169. Since the parties chose to arbitrate their dispute in Boston, they were not obligated to seek a New Hampshire court to confirm the award, and a Massachusetts court was adequate. Id. at 169, citing G.L.c. 251 §§16 and 17.
Thus, while the procedural posture in Kearsage is similar to the one presented here, the substance of the controversy is distinct. In that case, the enforceability and performance of the New Hampshire arbitration agreement was in dispute, and not the soundness of the arbitrator’s decision. Nevertheless, the Supreme *573 Judicial Court implicitly applied the “most significant relationship” principles described above. While the enforceability of a New Hampshire arbitration agreement warranted the application of New Hampshire law, the validity of the Massachusetts court’s jurisdiction warranted the application of Massachusetts law.
The “most significant relationship” principle is also the implicit thrust of Baxter Health Care Corp. v. Harvard Apparatus, Inc., 35 Mass.App.Ct. 204 (1993), which held that the Uniform Arbitration Act was not universally preempted by the Federal Arbitration Act, even where the transaction in dispute involved interstate commerce. Id. at 205, n.2. In that case, the Appeals Court held that where “neither the validity nor the enforceability of the arbitration clause is at issue,” Massachusetts law should control issues regarding the arbitration award. Id. The Appeals Court stated that applying Massachusetts law, under the circumstances, enhanced the “efficiency of the arbitral process . . . [and did] not directly conflict with a contractual provision.” Id., quoting New England Energy, Inc. v. Keystone Shipping Co., 855 F.2d 1, 7 (1st Cir. 1988).
Kearsage and Baxter exhibit an implicit preference for the “most significant relationship” test and an explicit preference for arbitral finality and — at least where neither the validity nor the enforceability of an arbitration clause is at issue — Massachusetts law in cases where an arbitration is conducted within the Commonwealth. This is consistent with standards applied in other jurisdictions, see e.g., Moyer v. Van-Dye-Way Corp., 126 F.2d. 339, 340-42 (3d Cir. 1942) (validity of an arbitration award between New Jersey corporation and Pennsylvania union determined “by the law of the state where rendered”), citing 2 Beale, The Conflict of Laws (1935), §347.6. These preferences are also consistent with the standards applied by courts considering arbitration awards rendered in other states. See Maxwell Shapiro Woolen Co, Inc. v. Ametron Corp., 339 Mass. 252, 257-58 (1959) (where contract required Massachusetts corporation to arbitrate dispute in New York in accordance with the laws of New York, contract constituted advance consent to arbitrate in accordance with the rules of one of the three named arbitration organizations and with the laws of New York). See also Joseph L. Wilmotte & Co. v. Rosenman Bros., 258 N.W.2d 317, 328-29 (Iowa 1977) (where parties agreed to arbitrate contractual claims according to AAA rules, and where the AAA exercised its power and made New York as the locale for the arbitration, parties deemed to have consented to application of New York law in determining whether agreement to arbitrate was enforceable); Gantt v. Felipe Y. Carlos Hurado & CIA, Ltda., 79 N.E.2d 815, 818 (N.Y. 1948) (where arbitration agreement compelled North Carolina lumber dealer and Nicaraguan partnership to arbitrate their dispute in New York, New York law controlled the enforceability of the agreement because arbitration relates to the law of remedies, and under that law the law of the forum controls); Application of Electronic & Missile Facilities, Inc., 236 N.Y.S.2d 594, 595-96 (1962) (where contract explicitly granted New York Supreme Court jurisdiction over arbitration agreement, New York law governs as to the arbitration provisions of the agreement).
For all these reasons, I rule that in this case Massachusetts law determines the appropriate judicial standard of review of the arbitration award. Although the Brook Village West partnership agreement requires that New Hampshire law control the issue of liability, it requires with equal clarity that arbitration be held in Massachusetts under the rules of the AAA. Where, as in this case, “neither the validity nor the enforceability of the arbitration clause is at issue,” Baxter Health Care, Corp. v. Harvard Apparatus, Inc., 35 Mass.App.Ct. at 205, n.2, the validity of the arbitration award must be “determined by the law of the state where rendered,” Moyer v. Van-Dye-Way Corp., 126 F.2d. at 340-42, because as the forum state, Massachusetts has the “most significant relationship” to the parties with regard to the validity of the arbitration award. In addition, by voluntarily agreeing to arbitrate their dispute in Boston, the parties recognized that this Court would be authorized to confirm or vacate the award. Applying the local standard of review in this case thus protects the “justified expectations of the parties.” See Restatement (Second) Conflict of Laws, §218, comment b (1971).
Applying Massachusetts law, I rule that the arbitrator’s award is confirmed insofar as it awarded the Brook Village West Partnership $16,730.88 and awarded Fisher $125 in administrative fees and expenses. I find no evidence of fraud, corruption, or other undue means, nor do I find evidence of partiality, excess of power, or refusal to hear further evidence. See G.L.c. 251, §12. Based on the record before me, I find and rule that the arbitrator fairly and impartially considered the issues before him and was appropriately and adequately briefed with regard to these issues.
Nevertheless, the arbitrator’s award of “reasonable attorneys fees and costs” must be vacated. In the absence of a prior agreement by the parties, an award of fees is prohibited by G.L.c. 251 §10. See also Baxter Health Care, Corp. v. Harvard Apparatus, Inc., 35 Mass.App.Ct. at 208. This prohibition “avoids encumbering the ‘arbitration procedure by appending to it any of the incidents of litigation.’ ” Id., quoting Floors, Inc. v. B.G. Danis of New England, Inc., 380 Mass. 91, 96 (1980). Because an arbitrator exceeds his authority when he awards relief prohibited by law, see Marlborough v. Cybulski, Ohnemus & Associates, Inc., 370 Mass. 157, 160 (1976), any award of attorney fees which has not been previously authorized must be vacated.
*574 The defendant argues that the Settlement Agreement authorizes the award of attorneys fees and expenses. That agreement, which includes a Massachusetts choice-of-law provision, states in relevant part:
In the event that at any time subsequent to the execution of this Agreement any of the Parties institutes a legal proceeding against any one or more of the other Parties, whether or not such proceeding arises out of this Agreement, the prevailing Party in such proceeding shall be entitled to an award of his reasonable attorneys fees and costs from the losing Party. For the purposes of this Agreement, the “prevailing Party” shall be that Party in whose favor the court hearing the proceeding enters judgment on the principal claims in dispute following the trial and appeal, if any, of the proceeding. [Emphasis added].
By its express language, the Settlement Agreement does not include arbitration, but only applies to court proceedings.
In Floors, Inc. v. B.G. Davis of New England, 380 Mass. 91 (1980), the Supreme Judicial Court affirmed the Appeals Court, 7 Mass.App.Ct. 356 (1979), regarding an award of attorneys fees for arbitration. That dispute concerned an alleged violation of G.L.c. 149, §29, which provides that “[a] decree in favor of any claimant under this section shall include reasonable legal fees,” and sets standards for determination of their amount. Id. at 92-93. Although the arbitrator did not award attorneys fees, the trial judge who confirmed the arbitration award awarded attorneys fees for work attributable to the arbitration. Id. The Appeals Court reversed this ruling and held that “so much of the legal fees attributable to the arbitration should not have been allowed.” Id.; 7 Mass.App.Ct. at 358. Indicating a reluctance to encumber the statutory arbitration procedure with the “incidents of litigation,” the Supreme Judicial Court affirmed the Appeals Court, stating that “(i]n the absence of special arrangement to the contrary, legal fees arising out of arbitration have never been awarded in the past, and we shall not depart from this practice in the absence of a legislative determination to do so.” 380 Mass. at 96 and 101.
Similarly, in Raytheon Company v. Computer Distributors, Inc., 633 F.Supp. 535 (D.Mass. 1986), alocal federal judge affirmed the arbitrators’ decision that they were not empowered to award attorneys fees for violations of G.L.c. 93A, §11,[6] even though “a court would be obligated to do so if the violation had been established through litigation rather than by arbitration.” Raytheon Company v. Computer Distributors, Inc., 633 F.Supp. at 558. Judge Wolf stated that “the rational of the Floors decision itself precludes an award of fees in this case,” and that absent statutory authority to the contrary, the ruling by the arbitrator must be affirmed. Id. Although this case concerns a provision in a Settlement Agreement and not a statute, I am persuaded by the methodology applied in Floors and Raytheon and vacate the award of attorneys fees and expenses. The Settlement Agreement does not authorize compensation for attorneys fees in cases involving arbitration, and thus the arbitrator exceeded his authority by doing so.
I likewise deny both party’s motions for attorneys fees and costs attributable to this action. Because neither party is the “prevailing party” as contemplated by the Settlement Agreement, neither party is entitled to attorneys fees and costs.
Order
For the foregoing reasons, the December 4, 1995 arbitration award is CONFIRMED insofar as it awarded the defendant $16,730.88 and awarded the plaintiff $ 125 in administrative fees and expenses. The award is VACATED insofar ¿s it awarded the defendant its attorneys fees and expenses. Both party’s motions for attorneys fees and expenses attributable to this proceeding are DENIED.

Although Brook Village West was originally formed as a limited partnership, upon withdrawal of the sole limited partner in the early 1980s, it converted to a general partnership.

The Brook Village West partnership agreement provides in relevant part: “6.3(d) Arbitration. If a controversy among the General Partners arises, any General Partner may submit the controversy to arbitration in the City of Boston, Massachusetts, before a single arbitrator, in accordance with the rules and procedures then in effect of the American Arbitration Association or successor organization. The decision of the arbitrator shall be binding upon the General Partners and the Partership and judgment on any award made by the arbitrator may be entered in any court having jurisdiction thereof. The costs of arbitration shall be borne equally by the General Partners hereto.”

The Brook Village West partnership agreement contains the following choice-of-law provision: “15:7 Applicable Law. This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of New Hampshire."

Fisher argues that this statute applies here, principally relying on Major v. Acorn Investment Company, Inc., 134 N.H. 86, 89 (1991). Major holds that an agreement to arbitrate in a New Hampshire contract may be subject to the New Hampshire arbitration statute, whether or not such jurisdiction was explicitly granted in the provision. The case does not, however, consider a choice-of-law provision, nor does it consider an explicit agreement to arbitrate in another state.

N.H. Rev. Stat. Ann. §542:8 provides in full: “At any time within one year after the award is made any party to the arbitration may apply to the superior court for an order confirming the award, correcting or modifying the award for plain mistake, or vacating the award for fraud, corruption, or misconduct by the parties or by the arbitrators, or on the ground that the arbitrators have exceeded their powers.”

Mass. Gen. Laws ch. 93A, §11 provides in relevant part: If the court finds in any action commenced hereunder that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys fees and costs incurred in said action. [Emphasis added).