CONNECTICUT VALLEY SANITARY WASTE DISPOSAL, INC. *VS.*
RICHARD M. ZIELINSKI & another[1] (and a companion case[2]).

Hampden. November 8, 2001. - March 12, 2002.

Present: GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Arbitration,* Authority of arbitrator, Judicial review, Vacating award, Award.
*Interest. Solid Waste Management.*

In an arbitrated dispute over rent between two parties to a commercial lease,
the arbitrators exceeded their authority by modifying their award, after
reopening the arbitration hearings and taking additional evidence, based on
one party's failure of proof, and a Superior Court judge, acting pursuant to
G. L. c. 251, § 12 (*a*) (3), properly vacated the portion of the modified
award that reduced the opposing party's award. [267-269]

In an arbitration case, a Superior Court judge erred in awarding a party post-
award interest calculated only on the principal of the award and not also
on the preaward interest, and incorrectly applied a payment by the oppos-
ing party to the principal portion of the award, rather than to the accrued
interest that was due; however, the judge properly declined to modify the
award to include additional interest for a period that preceded the award.
[269-272]

CIVIL ACTION commenced in the Superior Court Department on
December 3, 1993.

Motions for modification and vacation of an arbitration award
were heard by *Bertha D. Josephson*, J., and a motion for inter-
est was also heard by her.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Deborah L. Thaxter* (*Toby R. Unger* with her) for Connecticut
Valley Sanitary Waste Disposal, Inc.

*Wayne F. Dennison* & *Jeffrey P. Hermes* for Richard M. Zie-
linski & another.

CORDY, J. This matter arises out of an arbitrated dispute over

[1]Martin A. Zielinski.

[2]Richard M. Zielinski & another *vs.* Connecticut Valley Sanitary Waste
Disposal, Inc.

rent between two parties to a commercial lease. We decide three issues: first, whether the arbitrators exceeded their authority by modifying their award after reopening the arbitration hearings and taking additional evidence; second, whether the Superior Court was correct in awarding postaward interest only on the award's principal; and third, whether a partial payment of the award was correctly applied first to the outstanding principal rather than to accrued interest.

1. *Facts.* Connecticut Valley Sanitary Waste Disposal, Inc. (Connecticut Valley), leased property in Chicopee from Richard M. and Martin A. Zielinski (Zielinskis) to use as a landfill.[3] The lease provided that the annual rent payable by Connecticut Valley to the Zielinskis was to be fifty per cent of the net income from the operation of the landfill. Net income was to be calculated by:

> "taking the gross receipts for said business and subtracting therefrom those expenses included in the categories listed on Schedule A attached hereto and made a part hereof, and any other expenses of either Lessor or Lessee reasonably connected with the operation, promotion, development or pursuit of said businesses."

The lease also contained a clause stating that either party could request arbitration to resolve disputes arising out of the lease.

In late 1991, the parties agreed to submit to arbitration disputes that had arisen about the calculation of rent. The Zielinskis claimed that Connecticut Valley had breached the lease by understating the actual income of the landfill, and overstating or misallocating the actual expenses of the landfill. Connecticut Valley claimed that the Zielinskis had breached the lease by denying it sole and exclusive use of the land, conducting business from the property without properly accounting for that income, and using the land and its equipment without payment.

The parties' claims were arbitrated before a three-member

---

[3]The original lease was entered into by Antoinette Zielinski in 1983. In 1987, Antoinette, Richard, and Martin Zielinski and Connecticut Valley Sanitary Waste Disposal, Inc. (Connecticut Valley), entered into an addendum to the original lease.

panel. There were thirteen days of hearings between December, 1991, and September, 1993, and the hearings were closed on September 30, 1993.[4] In a report dated November 2, 1993, the panel awarded $2,120,698 in monetary damages to the Zielinskis and $89,729 to Connecticut Valley. The arbitrators awarded simple preaward interest at eight per cent per year from the end of the fiscal year in which the damage claims arose until the close of the arbitration hearings (September 30, 1993).

On November 24, 1993, both parties filed motions with the arbitrators requesting clarification or modification of the award, and each party filed an application in the Superior Court to modify the award. The parties agreed that there were three calculation errors in the award that the arbitrators should correct. Connecticut Valley also asserted that the arbitrators had made a mistake in the calculation of certain personnel (equipment operator) costs that were properly deductible from the gross receipts and, consequently, the rent due the Zielinskis. The Zielinskis opposed Connecticut Valley's application to modify this aspect of the award, contending that it was "*not* based on evidence presented to the Arbitrators, or [is] based on considerations which are outside the scope of Modification permitted by c. 251 of the Massachusetts General Laws."

The arbitrators convened additional hearings on January 19, and March 1, 1994. During these postaward hearings, the arbitrators stated that, based on the evidence presented at the original hearings, they had assumed that Connecticut Valley was paying people to operate certain equipment at the landfill only fifty per cent of the time, but, in retrospect, realized that they had not received enough evidence to evaluate whether this assumption was correct. Over the Zielinskis' objection, Connecticut Valley presented additional evidence on this issue, including testimony that for each hour the machines were running, there was a person operating each machine. After the

---

[4] During the hearings, the arbitrators heard testimony from eight witnesses and received fifty-three exhibits. The arbitrators considered the Zielinskis's claims that arose during fiscal years 1988 through to March 31, 1992, and Connecticut Valley's claims that arose during fiscal years 1988 through 1993.

postaward hearings were completed, the arbitrators became concerned about the scope of their authority and declined to modify the award unless the matter was resubmitted to them by the Superior Court.[5]

In May, 1994, Connecticut Valley filed a motion in the Superior Court for the entry of an order "directing the Arbitrators to complete action on the application of [Connecticut Valley] for modification of the award of the Arbitrators, thereby confirming the jurisdiction of the Arbitrators to do so." Connecticut Valley represented to the judge that "there remains only the decision of the Arbitrators on the merits of the application of [Connecticut Valley] to have the Arbitrators correct evident miscalculations in their Award, certain of which, as the Arbitrators have pointed out, are conceded by the [Zielinskis]." In their opposition to Connecticut Valley's motion, the Zielinskis argued that the hearings had been officially closed pursuant to the rules of the American Arbitration Association, the award had been issued, and the arbitrators did not have the authority to reopen the hearings and take additional evidence. On August 4, 1994, a judge in the Superior Court ordered the case resubmitted to the arbitrators.

On resubmission, the arbitrators issued a modification to the original award. In the modified award, the arbitrators first corrected the three errors that the parties agreed should be modified,[6] and then made a modification "of [their] own volition" and "in the interest of a fair and just Award in a continuing business relationship." Finding that they had erroneously assumed that Connecticut Valley had to pay people only fifty per cent of the time to operate certain machinery when the evidence now demonstrated that Connecticut Valley had to pay people

---

[5]The arbitrators' concern arose after they reviewed the Appeals Court's decision in *Baxter Health Care, Corp.* v. *Harvard Apparatus, Inc.*, 35 Mass. App. Ct. 204, 209 (1993) (original award of arbitrators final unless court finds that applicant seeks clarification of its precise meaning).

[6]The arbitrators corrected two mathematical errors that reduced the award to the Zielinskis by $19,865, and an incorrect number used to calculate certain costs that increased the Zielinskis' award by $23,629.

one hundred per cent of the time, two of the arbitrators[7] recalculated the portion of the award relating to operator costs, reducing the Zielinskis' award by $402,947.[8]

On December 7, 1995, in the ongoing proceeding, a Superior Court judge, acting pursuant to G. L. c. 251, § 12 (*a*) (3), vacated the portion of the modified award relating to the operator costs, finding that the arbitrators were without authority to take the additional evidence that formed the basis of that modification. Connecticut Valley appealed. On March 20, 1996, the judge awarded the Zielinskis postaward interest at the statutory rate of twelve per cent, but only on the principal of the award and not on the principal plus preaward interest. The Zielinskis appealed. We transferred the appeals to this court on our own motion.

2. *Modification of the award.* The scope of judicial review of an arbitration decision and award is narrow. See *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990). Judicial review of an arbitration award is proper "only to determine if the arbitrator has exceeded the scope of his authority, or decided the matter based on 'fraud, arbitrary conduct, or procedural irregularity in the hearings.' " *Id.*, quoting *Marino* v. *Tagaris*, 395 Mass. 397, 400 (1985). See G. L. c. 251, § 12. "To do otherwise would undermine the predictability, certainty, and effectiveness of the arbitral forum that has been voluntarily chosen by the parties." *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, supra, quoting *Marino* v. *Tagaris*, supra. "The policy of limited judicial review is reflective of the strong public policy favoring arbitration as an expeditious alternative to litigation for settling commercial disputes." *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, supra, and cases cited.

Notwithstanding this narrow scope of review, a court "shall vacate an award if . . . the arbitrators exceeded their powers." G. L. c. 251, § 12 (*a*) (3). Ordinarily, "an arbitrator is without power to modify his final award except where the controlling

---

[7]One of the three arbitrators dissented, believing that there was no evident miscalculation of figures in the original award that would justify this modification.

[8]The arbitrators subsequently corrected this amount to $393,722.

statute or the parties authorize modification." *Baxter Health Care, Corp.* v. *Harvard Apparatus, Inc.*, 35 Mass. App. Ct. 204, 208 (1993), quoting *Ciampa* v. *Chubb Group of Ins. Cos.*, 26 Mass. App. Ct. 941, 941 (1988). Under Massachusetts law, arbitrators have the authority to modify or correct an award at the request of a party or by a court order if "there was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award," or for the purpose of clarifying the award. G. L. c. 251, § 13 (*a*) (1), incorporated in G. L. c. 251, § 9.[9]

Connecticut Valley contends that what it asked the arbitrators to do and what they did was merely correct an evident miscalculation in the award. In rejecting Connecticut Valley's contention and vacating the modification, the judge relied on the reasoning of the Appeals Court in *Ciampa* v. *Chubb Group of Ins. Cos.*, *supra*, and distinguished its facts. In *Ciampa*, the arbitrator erred in the calculation of the award. The original award stated that "[t]he present value of the amount of $138,750.00 [the loss of earnings found by the arbitrator at the rate of $150 per week for 925 weeks] using the current legal rate of 12% is $18,837.00." *Id.* at 941. However, it was " 'evident,' . . . that the sum of $18,837, invested at twelve percent per annum, will not support a weekly payment of $150 per week for 925 weeks." *Id.* To help the arbitrator correct this mistake, *Ciampa* provided him with a printout prepared by a financial publishing company "computing (or shedding light on)" the correct calculation. *Id.* at 942.

The Appeals Court accepted "as generally valid the functus officio principle relied on by [Chubb] — i.e., the principle that an arbitrator is without power to modify his final award except where the controlling statute or the parties authorize modification," *id.* at 941, but noted that G. L. c. 251, § 13 (*a*) (1) (incorporated through G. L. c. 251, § 9), granted the arbitrator authority to modify or correct the award because there was an evident miscalculation on the face of the award. *Id.* Further, the court concluded that *Ciampa* "did not overstep bounds" in furnishing the arbitrator with the printout. *Id.* at 942. The court

---

[9]General Laws c. 251, § 9, provides other reasons for correction or modification of an award that are not relevant here.

declined, however, to "determin[e] the outer limits that may control the new evidence that may be considered by an arbitrator on a resubmission under § 9." *Id.*

Unlike *Ciampa*, where the incorrect calculation was evident on the face of the award and the "new" evidence merely provided the arbitrator with an alternative calculation, the incorrect calculation in this case resulted from Connecticut Valley's incomplete presentation of evidence during the preaward hearings. The transcript of the postaward hearing belies Connecticut Valley's assertion that it presented all of the necessary evidence to the arbitrators during the first set of hearings. During the postaward hearings, the arbitrators explicitly acknowledged: "We didn't have any evidence as to how much time was spent by the operators and we were a little bit in the dark with regard to whether or not there were any operators or were they all operators," and that the information "wasn't made clear in the testimony at all. In fact, [the arbitrators] asked a couple of times but we didn't seem to get any answers on it, whether operators [were] provided or not." In these circumstances, the modification could not have been based on an "evident miscalculation of figures."

The arbitrators explained that they were modifying the award "in the interest of a fair and just Award." This is not a basis for modification authorized by the controlling statutes or agreed to by the parties. Once the arbitrators had closed the proceedings and issued the award, they did not have the authority to take additional evidence, reopen the award, and modify the award based on Connecticut Valley's failure of proof.

We conclude that the Superior Court judge, acting pursuant to G. L. c. 251, § 12 (*a*) (3), properly vacated the portion of the modified award that reduced the Zielinskis's award by $393,722.

3. *Postaward interest.* Pursuant to the parties' arbitration agreement, the arbitrators were "empowered to award interest on any award they may determine is owed by one party to the other, and such interest shall be calculated on a basis determined by the arbitrators to be a fair and appropriate measure of the economic loss occasioned by the delay in the payment of money owed." The arbitrators awarded preaward interest at an annual rate of eight per cent from the end of the fiscal year in which

the claim arose to September 30, 1993, just before the issuance of the award. The net modified award totaled $2,030,969, or $1,585,474 principal and $445,495 preaward interest. The arbitrators did not determine a postaward interest rate.

In response to the Zielinskis's request, the Superior Court judge awarded postaward interest at a rate of twelve per cent. The judge applied this rate of interest only to the principal of the award, not to the principal plus the preaward interest, from November 2, 1993 (the date on which the arbitrators issued their award) until March 23, 1995 (the date on which Connecticut Valley paid $881,721 to the Zielinskis). The judge then applied the twelve per cent interest rate to the remaining outstanding principal, $703,753, from March 23, 1995 "until [the] present."

The Zielinskis argue that the judge erred in three ways: (1) by calculating the postaward interest only on the principal of the award, not on the award plus the interest; (2) by failing to apply payments made by Connecticut Valley to accrued interest before principal; and (3) by declining to modify the award to allow for preaward interest between October 1, 1993, and November 2, 1993 (the period between the close of the hearings and the arbitrators' award).

First, it was error to calculate the postaward interest on only the principal of the award. An arbitration award consists of both the principal and the preaward interest. Cf. *City Coal Co. of Springfield* v. *Noonan*, 424 Mass. 693, 695 (1997), *S.C.*, 434 Mass. 709 (2001) ("Although no case holds that postjudgment interest is calculated on the amount of the entire judgment [including prejudgment interest], the failure to calculate postjudgment interest on the entire judgment would fail to recognize fully the cost of the delay in receiving money to which the plaintiff was entitled"). Prejudgment interest "compensates the prevailing party for loss of the use of money that party, as determined by the judgment, should have had in the first place and not been obliged to chase." *City Coal Co. of Springfield* v. *Noonan*, 434 Mass. 709, 716 (2001), quoting *Makino, U.S.A., Inc.* v. *Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302,

320-321 (1987). Thus, postaward interest on an arbitral award is calculated on the entire amount of the award, which includes both the principal and interest.[10]

Second, Connecticut Valley's payment[11] was incorrectly applied to the principal portion of the award,[12] rather than to the accrued interest that was due.[13] "It is well established that, when a debtor pays money to a creditor, absent any express agreement to the contrary, the payment is first applied to the outstanding interest obligation and then to principal." *City Coal Co. of Springfield* v. *Noonan*, 424 Mass. 693, 696 (1997). Here, the judge first subtracted Connecticut Valley's payment of $881,721 from the award principal of $1,585,474, and then calculated twelve per cent interest on the remaining $703,753 principal. This was error. The judge should have first applied the payment to the interest obligation and then to the principal.

Finally, the judge properly declined to modify the award to include interest for the period October 1, 1993, to November 2, 1993. This period preceded the award and the entitlement of a party to preaward interest is a decision that is within the purview of the arbitrators. See *Baxter Health Care, Corp.* v. *Harvard Apparatus, Inc.*, 35 Mass. App. Ct. 204, 207 (1993), quoting *Blue Hills Reg. Dist. Sch. Comm.* v. *Flight*, 10 Mass. App. Ct. 459, 471-472 (1980), *S.C.*, 383 Mass. 642 (1981) (" 'The right to interest involves questions of fact and law that are within the purview of the arbitrators'"). See also *Sansone* v. *Metropolitan Prop. & Liab. Ins. Co.*, 30 Mass. App. Ct. 660, 663 (1991) ("in the absence of an explicit agreement to the contrary, [it is better

---

[10]The judge properly calculated the postaward interest from the date of the award. "To encourage 'swift obedience' to the award without the necessity of court proceedings, the rule in Massachusetts is that postaward interest runs from the date of the award." *Reilly* v. *Metropolitan Prop. & Liab. Ins. Co.*, 412 Mass. 1006, 1007 (1992), quoting with approval *Sansone* v. *Metropolitan Prop. & Liab. Ins. Co.*, 30 Mass. App. Ct. 660, 663 (1991).

[11]On March 23, 1995, Connecticut Valley paid $881,721 to the Zielinskis.

[12]The principal portion of the award was $1,585,474.

[13]When the judge issued her decision, Connecticut Valley owed the Zielinskis preaward interest at eight per cent, plus postaward interest at twelve per cent for the time period after November 2, 1993, the date of the award.

to consider] pre-award damage claims, including interest, to have been submitted to arbitration'').

· 4. *Conclusion.* We affirm the December 7, 1995, decision of the Superior Court vacating that portion of the modified award that relied on evidence from the postaward hearings. We vacate the March 20, 1996, decision relating to the calculation of the postaward interest, and remand the matter for further proceedings consistent with this opinion.

*So ordered.*