Gants, Ralph D., J.
Under an Omnibus Settlement Agreement (“OSA”) dated April 10, 1997, the Massachusetts Bay Transportation Authority (“MBTA”) and The McCourt-Broderick Limited Partnership (“McC-ourt”) agreed that, in the event of an alleged breach of the OSA, the parties would resolve their dispute through binding arbitration. OSA, §5.2(e) at p. 62. In the fall of 2004, a dispute arose over a parcel of land in South Boston known as the Seafood Center Parcel. On November 1, 2004, the MBTA filed suit in South Boston District Court seeking to evict McCourt from property adjacent to McCourt’s land in South Boston that McCourt had been using as a parking lot. McC-ourt contended that it lawfully occupied this property under a Letter Agreement entered into between the MBTA and McCourt on June 30, 2000. McCourt commenced a separate action in Suffolk County Superior Court seeking to compel the MBTA to arbitrate this dispute under the OSA. Seaport II, LLC et al. v. MBTA, Suffolk Civ. No. 04-4900. On November 19, 2004, Judge Herman Smith, Jr. ordered this dispute to be resolved through arbitration.
The parties agreed to arbitrate this dispute at Judicial Arbitration and Mediation Services, known as “JAMS,” with former Superior Court Judge Samuel Adams serving as the arbitrator. The Arbitration commenced on Januaiy 19, 2005. On May 1, 2006, the Arbitrator issued his Decision and Award of Arbitrator (“May 1, 2006 Award”). The Arbitrator ordered the MBTA to convey the Seafood Center Parcel to McCourt once McCourt paid the MBTA $13,016,458. May 1, 2006 Award at 35. In calculating this net award, the Arbitrator determined the purchase price to be $22,138,314 and then made various debits and credits to this purchase price. Among these adjustments, the Arbitrator found that the amount due the MBTA should be reduced by $2,551,532 because of a credit due McCourt for “unamortized replacement parking.” Id. at 34.
The May 1, 2006 Award was received by the parties onMay5,2006. On May 11,2006, the MBTA filed with the Arbitrator a Motion to Correct Error in Decision and Award of Arbitrator. In this Motion, the MBTA asked the Arbitrator to correct what it contended to be two errors in his May 1, 2006 Award. First, the MBTA argued that the Arbitrator, by compensating McCourt both for replacement parking and the fair market value of the properly, had unjustly enriched McCourt by $2,551,532 by essentially paying him twice for use of the same land during the same period of time. Second, the MBTA argued that the Arbitrator failed to compensate the MBTA for the fair rental value of McCourt’s continued use of the Seafood Center property for parking from June 2, 2002 to July 1, 2006, which should have reduced the amount due by an additional $2,146,155.
At or about the same time, McCourt separately moved to correct a typographical error in the award— the Arbitrator had mistakenly stated that the agreed value of the land was $158.08 per square foot when the correct amount was $155.08 per square foot.
On June 26, 2006, the Arbitrator issued a draft Order on Parties’ Motions for Reconsideration (“Draft Order”), which he provided to all parties for their review and comment. As to McCourt’s observation of a typographical error, the Arbitrator in the Draft Order acknowledged the error and agreed to correct it. Draft Order at 1-2. As to the MBTA’s argument about the double-counting of replacement parking, the Arbitrator admitted:
It appears that I may have in my “Decision and Award of Arbitrator” of May 1, 2006 created aveiy *254 large omelet. As a matter of justice, I believe I must make an attempt to unscramble it.
Id. at 1-2. The Arbitrator agreed that he had erred by double-counting the replacement parking. He disallowed the credit to McCourt he had previously allowed in the amount of $2,551,532, thereby increasing the net figure that McCourt must pay to the MBTA for the Seafood Center Parcel by that amount. Id. at 3-4. The Arbitrator in his Draft Order appears to have ignored the MBTA’s second contention as to the fair rental value of McCourt’s continued use of the Seafood Center property for parking from June 2, 2002 to July 1, 2006, thus implicitly rejecting it.
After considering what he characterized as “well-constructed and persuasive arguments” in response to his draft Order, the Arbitrator issued the Arbitrator’s Second Order, dated July 20, 2006 (“Second Order”). In this Second Order, the Arbitrator declared that he would no longer consider the Draft Order as a draft but would “enter it as an Order as of June 26, 2006, the date it was issued, nunc pro tunc.” Second Order at 2. He also essentially reaffirmed the findings in that Draft Order, and issued correcting findings to his May 1, 2006 Award.
McCourt has sold its real estate, and its rights under the arbitration award, to the plaintiff Fox Boston Seaport Land, LLC (“Fox”), who has filed a verified complaint seeking to vacate that part of the arbitration award which eliminated the credit for replacement parking and increased the amount due to the MBTA by $2,551,532. Fox seeks to confirm the balance of the award. Fox does not argue that the Arbitrator erred in concluding in his Draft Order and Second Order that the May 1, 2006 Award had mistakenly double-counted the replacement parking and thereby unjustly enriched McCourt (and now Fox). Rather, Fox argues that, as a matter of law, the Arbitrator did not have the authority to reconsider the May 1, 2006 Award and correct his error.
DISCUSSION
The Uniform Arbitration Act sharply circumscribes the grounds upon which an arbitration award may be reconsidered by the arbitrator. Under G.L. 251, §9, upon application of a party, an arbitrator “may modify or correct the award upon the grounds stated in (1) and (3) of subdivision (a) of section thirteen, or for the purpose of clarifying the award,” provided the application is made “within twenty days after delivery of the award to the applicant.” G.L. 251, §9. The two grounds on which an arbitrator may modify or correct the award are if:
1. “there was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award”; G.L.c. 251, §13(a)(l); or
2. “the award is imperfect in a matter of form, not affecting the merits of the controversy.” G.L.c. 251, § 13(a)(3).
The Supreme Judicial Court has declared, “Ordinarily, ‘an arbitrator is without power to modify his final award except where the controlling statute or the parties authorize modification.’ ” Connecticut Valley Sanitary Waste Disposal Inc. v. Zielinski, 436 Mass. 263, 267-68 (2002), quoting Baxter Health Care Corp. v. Harvard Apparatus, Inc., 35 Mass.App.Ct. 204, 208 (1993), which quotes Ciampa v. Chubb Group of Ins. Cos., 26 Mass.App.Ct. 941, 941 (1988). Consequently, even if the arbitrator lacks the authority under G.L. 251, § 13(a) (1) and (3) to modify a final award, he may still do so if “the parties authorize modification.” Id. Therefore, before this Court considers whether the Arbitrator’s modifications to the award in this case fell within the boundaries of G.L. 251, § 13(a)(1) or (3), this Court must first determine whether the parties have authorized the Arbitrator to make the type of modifications that he made.
Under the JAMS Comprehensive Arbitration Rules and Procedures (“JAMS Rules”), the Parties are deemed to have made the Rules a part of their agreement for binding arbitration by JAMS. JAMS Rules, Rule 1 (b). Under the JAMS Rules that were in effect as of January 19, 2005, when the arbitration commenced, “The Rules in effect on the date of the commencement of an Arbitration . . . shall apply to that Arbitration, unless the Parties have specified another version of the Rules.” JAMS Rules, Rule 3. Since the Parties did not specify another version of the Rules, these JAMS Rules remained in effect even though new JAMS Rules were promulgated one month later, on February 19, 2005.
The JAMS Rules provide, “Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final.” JAMS Rules, Rule 11(a).
The JAMS Rule governing the modification of arbitration awards is Rule 24(1), which reads:
Within seven (7) calendar days after issuance of the Award, any Party may serve upon the other Parties and on JAMS a request that the Arbitrator correct any computational, typographical or other error in an Award ... , or the Arbitrator may sua sponte propose to correct such errors in an Award. A party opposing such correction shall have (7) calendar days in which to file any objection. The Arbitrator may make any necessary and appropriate correction to the Award within (14) calendar days of receiving a request or seven (7) calendar days after the Arbitrator’s proposal to do so. The corrected Award shall be served upon the Parties in the same manner as the Award.
JAMS Rule, Rule 24(i). Rule 24(j) provides:
The Award is considered final, for purposes of either an Optional Arbitration Appeal Procedure pursuant to Rule 34 or a judicial proceeding to enforce, modify or vacate the Award pursuant to Rule 25, *255 fourteen (14) calendar days after service is deemed effective if no request for a correction is made, or as of the effective date of service of a corrected Award.
JAMS Rule, Rule 24(j).
There is no dispute that the MBTA timely filed its request that the Arbitrator correct the error in the Award.[1] Since the request for a correction was filed within fourteen days of the May 1, 2006 Award, that May 1, 2006 Award had yet to become final under Rule 24(j) and would not become final until the Arbitrator either denied the motion to correct or issued a corrected Award. JAMS Rules, Rule 24(j).
In his Draft Order, which the Arbitrator later made a nunc pro tunc Order, the Arbitrator acknowledged that McCourt had argued that he lacked the power to modify the May 1, 2006 Award because such power of modification was limited to computational, typographical, or similar errors in the Award. He answered this argument by writing, “Be that as it may, in my view justice requires a reexamination of the issue of replacement parking subsequent to August 7, 1999.” Draft Order at 3. In short, although his reasoning is hard to ascertain, the Arbitrator rejected McCourt’s contention that he lacked the power to modify his Award to correct the replacement parking error and went ahead and corrected it.
As noted, the Arbitrator had the authority to interpret the JAMS Rules and his interpretation “shall be final.” JAMS Rules, Rule 11(a). JAMS Rule 24(i) permitted the Arbitrator to “correct any computational, typographical or other error.” The Arbitrator was permitted to interpret this JAMS Rule to allow any error to be corrected when justice required, provided the Award had yet to become final, and his interpretation is binding upon the parties. Since the parties effectively incorporated the JAMS Rules as part of their agreement to have their dispute arbitrated by JAMS, and in doing so granted the Arbitrator final authority over his interpretation of those Rules, this Court finds that the parties have effectively authorized the Arbitrator to modify an Award, before it became final under JAMS Rule 24(j), whenever the Arbitrator interpreted JAMS Rule 24(i) to permit modification of the Award.
Fox makes essentially two arguments in support of its position that the Arbitrator lacked the authority to modify the Award by reversing his position regarding the replacement parking credit. First, it notes that the JAMS Rules which took effect on February 19, 2005 (and applied to arbitrations commenced after that date) changed the language of JAMS Rule 24(i) by permitting the Arbitrator to “correct any computational, typographical or other similar error.” The addition of the italicized word, Fox contends, was meant simply to clarify the previous Rule by making clear that modifications of an Award were limited to computational or typographical errors, or errors similar to computational or typographical errors. While Fox can appropriately argue that the “error” in the governing JAMS Rule 24(1) should be interpreted to be limited to errors similar to computational or typographical errors, it is equally appropriate to argue that the absence of the word “similar” means that any error may be corrected, even if different in kind, scope, or degree from a computational or typographical error.' The Arbitrator certainly acted within the scope of his authority in coming to the latter interpretation of the governing JAMS Rule 24(i).
Second, Fox observes that the JAMS Rules in effect for this Arbitration provided that “(i]f any of these Rules ... is determined to be in conflict with a provision of applicable law, the provision of law will govern . . .” JAMS Rules, Rule 4. Since, by this Rule, JAMS made clear that it did not intend that any of its Rules be in conflict with governing law, including the Uniform Arbitration Act, Fox contends that JAMS Rule 24(i) must be interpreted to reflect the limited grounds for modification found in G.L.c. 251, §1 & 3, that is, “evident miscalculation of figures” or matters of form, not affecting the merits. The flaw in this reasoning is that the JAMS Rules themselves determine when an award is final under the Uniform Arbitration Act and when the thirty-day time period provided under G.L.c. 251, § 12(b) to seek judicial modification or vacation of the award begins. See JAMS Rules, Rule 24(j). There is nothing in the Uniform Arbitration Act that bars the parties, when they commence the arbitration, from agreeing to accept JAMS Rules that allow a party, within seven days of its receipt of the arbitrator’s decision, to seek correction of any error before the decision is deemed by JAMS to be a final award. Rather, the Act simply limits the power of an arbitrator to modify his award after it becomes final under the JAMS Rules. In other words, JAMS Rules are free to permit reconsideration of an arbitrator’s decision for any reason provided the award, under JAMS Rules, has not yet become final.
Nor does it violate the spirit of the Uniform Arbitration Act to allow an arbitrator, with the prior agreement of all parties when they entered into the arbitration, to modify his award for any reason before it becomes final. For all practical purposes, under the JAMS Rules, the award issued by the arbitrator is a draft award and becomes a final award either: (a) fourteen days after service of the draft award, if no request for a correction is made or (b) upon the effective date of service of the corrected award or the denial of the request for correction. Once it becomes final, it may be corrected, either by the arbitrator or by the court, but only as to matters of form meant to effectuate the intent of the arbitrator, not as to any matters of substance that affect the merits of the controversy. See G.L.c. 251, §§9 & 13. By limiting the grounds for correction, the Act ensures that the substance of the arbitration award that the court must consider in determining whether to vacate the arbitration award will remain unchanged; the court need not *256 fear that the award under review will be a “moving target.” The public interest in the finality of arbitration reflected in the Act kicks in only when the award becomes final and the thirty-day clock for the losing party to move to vacate has begun to tick. The Act does not limit the time period for an arbitrator to resolve a dispute; nor does the Act prohibit an arbitrator from tentatively declaring his findings and allowing the parties the opportunity to challenge them before they become final. The Act simply limits the changes an arbitrator may make to his decision once it becomes final.
ORDER
For the reasons stated above, this Court ORDERS as follows:
1. The plaintiff Fox’s motion to vacate the Second Order of the Arbitrator, including the corrected findings to his May 1, 2006 Award, and confirm the May 1, 2006 Award (corrected only as the typographical error in the award) is DENIED.
2. The defendant MBTA’s motion to confirm the Second Order of the Arbitrator, including the corrected findings to his May 1, 2006 Award, is ALLOWED.

 Under the JAMS Rules, “the Award shall be issued by serving copies on the Parties.” While the Award is dated May 1, 2006, it was not received by the parties until May 5, 2006. The MBTA’s motion to correct was filed on May 11, 2006, which is more than seven calendar days after May 1 but within seven calendar days of May 5. However, even if the Award were “issued” on May 1, the Arbitrator had the authority under JAMS Rule 11 (e), “upon a showing of good cause or sua sponte, when necessary to facilitate the Arbitration, [to] extend any deadlines established in these Rules ...” JAMS Rules, Rule 11 (e). There can be no question that the Arbitrator agreed to consider the MBTA’s motion. Whether he did so because he found it timely or because he decided to extend the deadline is of no consequence, because he plainly had the authority to consider it even if he found it untimely.