PETER G. MARINO vs. KATINA TAGARIS.

Suffolk.  April 2, 1985. — July 11, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Arbitration,* Attorney's fees, Judicial review.  *Attorney at Law,* Compensa-
tion.  *Supreme Judicial Court,* Superintendence of inferior courts,
Practice of law.

This court, acting under its inherent power to regulate the practice of law
and under its general superintendence powers conferred by G. L. c. 211,
§ 3 (1984 ed.), reversed a judgment confirming the award of an attorney's
fee by a panel of the Fee Arbitration Board of the Massachusetts Bar
Association, where it concluded that the information furnished by the
board to the former client, who was unsophisticated in legal proceedings,
did not adequately describe the board's procedures or state clearly her
right to challenge the award. [400-404]

CIVIL ACTION commenced in the Superior Court Department
on December 2, 1983.

The case was heard by *William G. Young,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*William F. Green* for the defendant.

*Kevin M. Keating (Peter G. Marino* with him) for the plaintiff.

*Richard G. Hoffman & Stephen T. Sadler,* for Massachusetts
Bar Association, amicus curiae, submitted a brief.

LYNCH, J.  This case involves a fee dispute between an
attorney, Peter G. Marino, and his client, Katina Tagaris. The
parties agreed to arbitrate their dispute before a panel of the
Fee Arbitration Board (board) of the Massachusetts Bar Associ-
ation, which rendered its decision in favor of the attorney. The
arbitration award was confirmed by the Superior Court, and
the client appealed. We transferred the case to this court on
our own motion, and we reverse.[1]

---

[1] In considering this case, we intimate no view as to the merits of the
underlying fee dispute.

The client challenges the fairness of the arbitration proce-
dure. She states that the characterization of the proceedings as
"informal" did not sufficiently apprise her of the nature of
those proceedings. She also claims that she was not permitted
to respond to the attorney's argument before the board, and
that she was not adequately informed that the arbitration award
could be vacated or modified in court. As a result, she argues
that the award should be vacated because there was no "meeting
of the minds" on the agreement to arbitrate, and because she
was deprived of her property without due process of law. The
attorney contends that the client was properly advised concern-
ing the nature of the proceedings through the rules and
guidelines furnished to her by the board. He also maintains
that the reference in those rules to the procedures of G. L.
c. 251 (1984 ed.), were sufficient to put the client on notice
of her rights to challenge the award. In addition, the attorney
argues that the actions of the arbitration panel, and the sub-
sequent judicial enforcement of the arbitration award, do not
constitute "State action," so that no due process question is
presented. Finally, he contends that because of the established
judicial reluctance to interfere in arbitration, this court should
affirm the confirmation of the arbitration award. Because of
the view we take of the case, it is unnecessary for us to decide
the "State action" question. We decide that the client was not
sufficiently advised of the nature of the proceedings or of her
rights to challenge the award. Therefore, acting under our
inherent power to regulate the practice of law and the general
superintendence powers conferred by G. L. c. 211, § 3 (1984
ed.), we reverse, and order that judgment be entered vacating
the award. Unless the parties agree upon a new arbitration,
the attorney is left to his legal remedies to recover any fees
he believes remain unpaid.

The attorney represented the client in a divorce action which
concluded in December, 1982.[2] The client was a housewife

[2] The attorney states that he began representing the client on April 14,
1981, when he met with and informed her prior counsel of the hourly rates
he would charge; that it was his understanding that the client's prior counsel
passed that information on to the client; that the client orally agreed to the

395 Mass. 397 399

who, even in the attorney's opinion, "had led a relatively sheltered life as far as business was concerned." For legal services rendered, the attorney submitted a bill for legal fees and costs totalling $66,570.47.[3] The client questioned the amount of the bill, but paid $42,500 and agreed to submit the question to arbitration. On March 28, 1983, the client signed the standard form petition for arbitration before the board, in which she agreed to be legally bound by the decision of the arbitrators. The client also received two documents from the board, entitled, "A Guide to the Fee Arbitration Board" (guide), and "Rules of the Legal Fee Arbitration Board of the Massachusetts Bar Association" (rules).

On October 20, 1983, a hearing was held before a panel of three arbitrators. The client appeared without counsel, relying on the representation in the guide that "these proceedings are informal," as well as oral representations made to her by the board's staff before the hearing that she would not need an attorney.[4] The client claims that she and her father spoke for not more than two minutes, followed by a lengthy presentation by the attorney. After the attorney had presented his case, the client and her father sought to make additional statements, but were not permitted to do so, allegedly because the arbitrators were "running behind schedule."[5] The client therefore claims that she never had the opportunity to present her case properly, since she did not understand the nature of the proceedings and could not properly prepare for them, and that she was further prejudiced by the panel's refusal to allow her to respond to the attorney's presentation.

On the day of the hearing, the arbitrators rendered their decision in favor of the attorney for $24,070.47, the amount outstanding on the bill. The client did not seek to vacate the

rates on September 10, 1981; and that a written fee agreement was made on May 3, 1982, incorporating those rates and various other provisions.

[3] This amount represented $54,585.50 in legal fees and $11,984.97 in costs.

[4] The rules note that each party has a right to be represented by counsel.

[5] The guide states that each party will be allowed "at least ten minutes for their presentation."

arbitration award in court, allegedly because she did not realize that she had such a right. The rules state that the arbitration proceedings are subject to the provisions of G. L. c. 251, the Uniform Arbitration Act. That statute establishes the right and limitations on vacating, modifying, or correcting an arbitration award. See G. L. c. 251, §§ 9, 12, 13. However, neither the rules nor the guide explicitly refers to these rights. On December 2, 1983, after the expiration of the thirty-day period, the attorney brought an action to confirm the arbitration award, pursuant to G. L. c. 251, § 11. After a hearing, judgment was entered in favor of the attorney on December 28, 1983, and the client appealed.

1. *Power and scope of judicial review.* The Uniform Arbitration Act, as set forth in G. L. c. 251, was designed "to further the speedy, efficient, and uncomplicated resolution of business disputes with very limited judicial intervention or participation." *Floors, Inc.* v. *B.G. Danis of New England, Inc.,* 380 Mass. 91, 96 (1980). See *Quirk* v. *Data Terminal Syss.,* 379 Mass. 762, 767 (1980). Therefore, this court has frequently emphasized the "narrow scope of judicial review" of proceedings commenced under that statute. *Trustees of Boston & Me. Corp.* v. *Massachusetts Bay Transp. Auth.,* 363 Mass. 386, 390 (1973). See *Lawrence* v. *Falzarano,* 380 Mass. 18, 28 (1980); *Greene* v. *Mari & Sons Flooring Co.,* 362 Mass. 560, 562-563 (1972). See also *Bernard* v. *Hemisphere Hotel Management, Inc.,* 16 Mass. App. Ct. 261, 263 (1983). In general, we will inquire into an arbitration award to determine only if the arbitrators have exceeded their authority, or have decided the matter based on "fraud, arbitrary conduct, or procedural irregularity in the hearings." *Greene* v. *Mari & Sons Flooring Co., supra* at 563. To do otherwise would undermine the predictability, certainty, and effectiveness of the arbitral forum that has been voluntarily chosen by the parties. See *Quirk* v. *Data Terminal Syss.,* 394 Mass. 334, 339 (1985); *Lawrence* v. *Falzarano, supra* at 29.

The board "is designed as an alternative forum for the resolution of fee disputes — taking them out of the courts — with the intention of resolving them confidentially and expeditiously."

Deiana & Pessin, Res Gestae: Fee Arbitration Board, 63 Mass. L. Rev. 97, 98 (1978). Thus, many of the same considerations calling for limited judicial interference with the arbitral process are present in cases decided by the board. We need not decide, however, whether the facts of this case would warrant judicial intervention in the commercial situations typified by the cases cited above, for it is clear that our powers are broader here. This court is the "ultimate authority" over the conduct of members of the bar. *Opinion of the Justices,* 375 Mass. 795, 813 (1978). See *Matter of Mayberry,* 295 Mass. 155, 160 (1936); *Opinion of the Justices,* 289 Mass. 607, 612 (1934); *Matter of Keenan,* 287 Mass. 577, 582 (1934). We have a responsibility to ensure that arbitration between attorney and client is fair both in its practice and in its perception by the public. Our power to inquire more closely in these arbitration proceedings is unquestionably broader than in the typical arbitration case, and is based on our inherent power to regulate the practices of members of the bar and to provide for the proper administration of justice. See *McInerney* v. *Lally,* 384 Mass. 810, 811 (1981). Thus, we may intervene "whenever it appears that, in the practice of law, methods, customs, or habits have grown up among members of the bar which are undermining the confidence of the public in the courts." *Collins* v. *Godfrey,* 324 Mass. 574, 578 (1949). This inherent power is reinforced by the extraordinary powers, conferred by G. L. c. 211, § 3, of general superintendence over the courts of this Commonwealth, in which the attorney sought to have the arbitration award confirmed. See *Hadfield* v. *Commonwealth,* 387 Mass. 252, 255 & n.2 (1982); *McIntyre* v. *County Comm'rs of Bristol,* 356 Mass. 520, 525-526 (1969); *Commonwealth* v. *Cummings,* 3 Cush. 212, 214 (1849).

In this case, the board's rules and guide did not adequately inform the client of the nature of the hearing or of her right to challenge the award. Because this creates a risk that public confidence in the conduct of attorneys and the fairness of the judicial system may be undermined, we decide to exercise the powers described above to grant relief to the client.

2. *The client's understanding of the proceedings.* The board encourages clients to represent themselves in fee arbitration disputes. See Deiana & Pessin, *supra* at 97. This policy springs from a laudatory desire "to present a nonintimidating forum." *Id.* "Arbitration in which the client is an active participant will result in increased public awareness and understanding of the legal profession. This will most likely elevate the public's perception of the profession, as arbitration enables the disputants to interact in an informal, private situation as opposed to the more public, accusatory forum of litigation." George, Arbitration of Attorney Fee Disputes: New Direction for Professional Responsibility, 5 U.C.L.A. — Alaska L. Rev. 309, 340 (1976). There is nothing inherently wrong with encouraging self-representation by clients. Nevertheless, a client who is unsophisticated in legal proceedings and who is not given an adequate advance understanding of the hearing may well be intimidated by being virtually the only nonattorney present.[6] Since such a person also lacks the legal background to know the factors relevant in mounting a successful challenge to the claimed fee, this might lead to a perception by the client that she is on an unequal footing with the attorney defending his fee. These problems may be avoided when the client is given a thorough understanding of what she can expect to confront at the hearing.

In this case, the client claims that in conversations with the board's staff prior to the hearing, it was stressed to her that she did not need an attorney to represent her, since the hearing was "informal." Similarly, the guide states that "these proceedings are informal." These broad statements do little to aid a client's understanding of what is to take place. Moreover, the lay person's expectations probably differ substantially from

---

[6] The board's arbitrators are all practicing attorneys with experience in the areas of law in dispute. Some bar associations have begun to include lay persons on their arbitration panels to counter the perception that a panel of attorneys will be biased. See Devine, Mandatory Arbitration of Attorney-Client Fee Disputes: A Concept Whose Time Has Come, 14 U. Tol. L. Rev. 1205, 1226 (1983).

the attorney's awareness that an "informal" hearing merely means that the strict rules of evidence will be relaxed.[7]

We also agree with the client that the materials she received from the board did not sufficiently apprise her of the right to challenge the arbitration award. The client had agreed to be "bound" by the decision of the board, and the only notice she received that the award might be subject to challenge merely stated in general terms that G. L. c. 251 applied to the proceedings.[8] She states that by the time she was aware of that right, the thirty days for doing so (G. L. c. 251, § 12 [b]) had long since elapsed, and that she did not challenge the award only because she was unaware that it was possible to do so. For example, if adequately proved, her claim that she was not permitted to present fully her side of the dispute would have been a ground for vacating the award under G. L. c. 251, § 12.[9] Likewise, she may have been able to show that her understanding of what the arbitration entailed was so faulty as to prevent a "meeting of the minds," and thus to prevent the creation of a valid arbitration agreement. This would have been a basis for vacating the award under § 12 (a) (5). We therefore decide that the inadequate characterization of the hearing and the lack of a clear statement of the parties' rights to challenge the award are sufficiently serious to require us to reverse the judgment confirming the award.

In identifying the procedural problems that are highlighted by this case, we do not intend to intimate any general criticism of the valuable public service performed by members of the

---

[7] The rules also refer to "informal arbitration," which apparently refers to settlement of the dispute before the "informal" hearing takes place.

[8] Rule 15.1 of the rules states: "The Uniform Arbitration Act, Massachusetts General Laws, Chapter 251, subject to the established rules of the Legal Fee Arbitration Board, will apply in those cases in which both the petitioner and the respondent have agreed to be bound by the decision of the Board." The guide makes no reference to the availability of a challenge to the award.

[9] General Laws c. 251, § 12 (a), states in part: "Upon application of a party, the court shall vacate an award if: . . . (4) the arbitrators refused to . . . hear evidence material to the controversy or otherwise so conducted the hearing . . . as to prejudice substantially the rights of a party."

board and the arbitrators who serve on its panels. They have successfully provided an easily accessible forum where fee disputes can be resolved quickly, confidentially, and inexpensively while preserving and enhancing public confidence in the legal system. However, "[a]s the means of access to our system of justice, lawyers owe a special ethical duty to society to ensure that the value of their services is fairly measured." Aronson, Attorney-Client Fee Arrangements: Regulation and Review, 68 A.B.A.J. 284 (1982). It is clear from this case that, at least in some respects, the rules and the guide do not provide an adequate explanation of the proceedings to clients who represent themselves before the board. In encouraging the worthy goal of self-representation by clients, the board must be especially careful to tailor its information so that it is clear and comprehensive to those who have little or no familiarity with the legal system. When the client knows what to expect at the arbitration hearing, and is fully informed of her rights, her confidence in the integrity of the profession can only be enhanced. Because the client in this case was not so informed, we reverse the judgment of the Superior Court confirming the arbitration award, and order judgment to be entered vacating that award.

*So ordered.*