BRUCE N. HAGUE & others[1] vs. ALBERT PIVA.

No. 02-P-434.

Bristol. November 20, 2003. - May 24, 2004.

Present: LAURENCE, MILLS, & TRAINOR, JJ.

*Arbitration,* Attorney's fees, Judicial review, Vacating award. *Attorney at Law,* Compensation.

A Superior Court judge hearing a motion to vacate a decision of the Legal Fee Arbitration Board of the Massachusetts Bar Association (board) did not abuse his discretion in determining that the board had refused to hear evidence material to the controversy [226-228]; further, the judge's action in scheduling the matter for trial in the Superior Court, rather than remanding for further arbitration before the board, was a technical error not requiring reversal, where the result (i.e., effectively vacating an earlier order compelling arbitration before the board) was obviously what the judge intended and was statutorily authorized to do [228-229].

CIVIL ACTION commenced in the Fall River Division of the District Court Department on December 11, 1997.

After removal to the Superior Court Department, a motion to vacate an arbitrator's award was heard by *Charles J. Hely,* J.

*Scott D. Burke (Richard W. Jensen* with him) for the plaintiffs.

*Timothy D. O'Hara* for the defendant.

MILLS, J. This is an appeal from a judgment of the Superior Court vacating an award by the Legal Fee Arbitration Board (FAB) of the Massachusetts Bar Association. The judge determined that the FAB had refused to hear evidence material to the controversy (G. L. c. 251, § 12[*a*][4]) and, rather than ordering another arbitration, restored the matter to the Superior Court trial list. We affirm.

1. *Background.* Attorneys Bruce N. Hague and Mary L. Sahady and their law firm, Hague, Sahady & Co., Attorneys at

[1]Mary L. Sahady and Hague, Sahady & Co., Attorneys at Law, P.C.

Law, P.C. (plaintiffs), commenced this action in the District Court to recover legal fees against their client, defendant Albert Piva. Piva filed counterclaims alleging breach of contract, breach of warranty, violation of G. L. c. 93A, legal malpractice, and intentional and negligent infliction of emotional distress. The case was removed to the Superior Court, where a judge allowed "by agreement" a joint motion "to allow the parties leave to submit their claims and *counterclaims*, in [this] matter, to the Legal Fee Arbitration Board (FAB) of the Massachusetts Bar Association" (emphasis supplied).[2] Thereafter, however, the FAB informed the parties that the FAB had no authority to, and would not, consider counterclaims, including malpractice or G. L. c. 93A claims. Malpractice and c. 93A *defenses*, however, could be considered, but only insofar as such claims bore upon the fair and reasonable value of a lawyer's services.[3]

Piva then sought to avoid arbitration entirely and the plaintiffs sought to compel it. Neither party ever sought to sever the claims from the counterclaims. See G. L. c. 251, § 2(*b*), (*d*). It was the plaintiffs' position that Piva, by agreeing to submit to arbitration by the FAB, had "agreed to limit his counterclaim(s) to an adjustment of Plaintiffs' fees," knowing full well that the FAB would not otherwise decide his counterclaims. Piva, on the other hand, asserted mutual mistake as grounds for rescission of the agreement to arbitrate. By decision dated March 2, 2000, a second Superior Court judge ordered the parties to complete arbitration promptly in accordance with their agreement.

---

[2]The joint motion also provided:

> "The parties have mutually agreed to submit their claims to the aforesaid [FAB] and have the determination of the [FAB] binding upon the parties in this action. The parties further agree that the determination of the FAB shall be submitted to this Court for entry of judgment in accordance with the [FAB's] findings."

[3]Rule II.A(3) of the Rules of the Legal Fee Arbitration Board, as amended and effective June 21, 2000 (two days before the second order compelling arbitration, i.e., prior to the arbitration hearing), provides:

> "The Board shall not award damages or increase or reduce the fee to compensate for other claims of any party, but evidence shall be heard regarding a claim of the attorney's handling of a case or a client's actions to determine whether the fee charged for the ultimate services rendered was fair."

By decision dated June 23, 2000, the second judge, noting that "both parties accepted without reservation all the consequences of arbitration by the [FAB], even if the [FAB] will not consider counterclaims except to the extent that they diminish or offset any fee amount that the attorney may be entitled to recover," ordered the parties to complete arbitration of all claims and counterclaims promptly before the FAB *or* by arbitration before an arbitrator arranged by the alternative dispute resolution coordinator of the FAB, with the coordinator authorized to assign a neutral arbitrator if the parties could not agree to one.[4]

The case proceeded to arbitration before the FAB, and by award dated December 12, 2000, the FAB found that the total amount charged by the plaintiffs for their services (including costs and disbursements) was $40,511.76, that the total reasonable amount was $24,401.01, that the amount paid by Piva was $9,184.57, and that the total due from Piva to the plaintiffs was $15,216.44.

Piva moved in the Superior Court to vacate, modify, or correct the arbitration award, asserting specifically under G. L. c. 251, § 12(*a*)(4),[5] that the arbitrators had refused to hear evidence material to the controversy to his prejudice, i.e., the arbitrators refused to hear the counterclaims or any evidence respecting them, and evidence from attorney Gregory Jonsson (successor to the plaintiffs as counsel for Piva) respecting the nature of the plaintiffs' services and the manner in which they were rendered. By competing affidavits, the parties disputed whether the FAB had actually refused to hear evidence relevant to the counterclaims or had merely declined to rule on such

---

[4]By order dated July 31, 2000, a single justice of this court denied Piva's petition under G. L. c. 231, § 118, first par., for relief from the order to complete arbitration.

[5]General Laws c. 251, § 12, provides, in pertinent part:

"(a) Upon application of a party, the court shall vacate an award if: . . . (4) the arbitrators . . . refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section five, as to prejudice substantially the rights of a party."

G. L. c. 251, § 12, as appearing in St. 1972, c. 200, § 1.

claims, and whether the FAB had not allowed Piva to call Jonsson as a witness. The second judge noted in his memorandum of decision and order on Piva's motion that Jonsson's testimony might have been material to "a claim of the attorney's handling" of the cases and "whether the fee charged for the ultimate services was fair." The judge stated:

> "It is not at all clear that the proposed testimony was actually excluded; the witness was on call rather than present and ready to testify. The proposed testimony also may have been unnecessarily cumulative. Considering the affidavits of both Attorney Mitchell and Attorney Sahady, however, and the strict limits on counterclaim evidence in Legal Fee Arbitration Board Rule II A(3), amendment effective June 21, 2000, the court concludes that the arbitrators' comments to Attorney Mitchell regarding the proposed testimony of Attorney Jonsson amounted to a refusal to hear material evidence."

On this basis, the judge vacated the award under G. L. c. 251, § 12(*a*)(4), and set the matter for trial. The plaintiffs appeal, asserting that the judge (1) abused his discretion in vacating the award because he was insufficiently explicit in finding a refusal to hear material evidence; and (2) erred in ordering the matter to trial, rather than back to the FAB. We disagree.

2. *Discussion.* General Laws c. 251, § 12, applies to determinations of the FAB. See *Marino* v. *Tagaris*, 395 Mass. 397, 401 (1985). The statute specifies five reasons upon which a court *shall* vacate an arbitration award, upon the application of a party. In this case, Piva alleged three of the five reasons in his Superior Court motion to vacate. However, the judge based his order on only one reason: that "the arbitrators . . . refused to hear evidence material to the controversy." See G. L. c. 251, § 12(*a*)(4), as appearing in St. 1972, c. 200, § 1.

The plaintiffs assert that the judge did not find that the arbitrators "refused" to hear "material evidence," and that the arbitration panel did not, in fact, refuse to hear evidence material to the controversy. The plaintiffs also assert that the judge thus abused his discretion in vacating the award and scheduling the case for trial.

(a) *Refusal and materiality.* Piva filed three affidavits in support of his motion to vacate. Those affidavits are hardly examples of affidavit artistry. Nevertheless, the Superior Court judge could have concluded the following: that the affiants sufficiently asserted that the FAB, at the commencement of the hearing, ruled that the "counterclaims would not be heard at all" by the panel, nor would any evidence relating to those counterclaims be heard; that Piva proposed to elicit testimony from one attorney (successor counsel to the plaintiffs) who would testify as to the nature of the plaintiffs' services and charges "and also as to facts involving the handling of the underlying actions in these claims"; that Piva's attorney "asked several times to bring [the successor attorney] in and was told that the [FAB] would not then hear him and would let [Piva and his attorney] know later whether or not they wanted to hear him"; and that no evidence at all was heard as to the elements of, or damages on, Piva's counterclaims.

We consider it significant that, in addition to the affidavits, the judge had dealt with several earlier skirmishes between the parties as to the scope of the initial joint agreement to arbitrate and the alleged late notice to (or at least awareness by) the parties of new rules of the FAB pertaining to counterclaims.[6] He also had heard and decided the plaintiffs' petition to compel arbitration, the plaintiffs' motion to continue trial date, and the plaintiffs' motion for clarification, and also had reviewed accompanying memoranda. In addition to Piva's motion to vacate, there also was pending a motion to reconsider two prior orders compelling arbitration.

We hold that the judge was within his discretion in determining that the FAB refused to hear the proposed testimony of attorney Jonsson. Although the judge simply said that "the proposed testimony would . . . be material to the plaintiff attorneys' handling of the case and the fairness of the fee," we will not second guess his view of the matter. We respect his conclusion that successor counsel's testimony would have been helpful to an understanding of what the plaintiffs, as predecessor counsel, had done on cases that successor counsel assumed,

---

[6]See note 3, *supra.*

and we respect the judge's interpretation of the statements of the members of the FAB.

(b) *Scheduling of trial rather than rehearing at the FAB*. The judge ordered that the case be scheduled for trial and explained his reasons:

> "While the court would normally order another arbitration, the arbitration agreement was limited to arbitration by the [FAB]. The [FAB's] consideration of counterclaim evidence is narrowly restricted by its rules. The arbitrators who heard the case made an evidentiary ruling excluding material evidence for the defendant based on their independent and conscientious interpretation of the [FAB's] rules. To compel further arbitration by the [FAB] would not be an appropriate remedy in the unusual circumstances of this case. The clerk will schedule a pretrial conference and a trial."

The plaintiffs assert that the judge's order exceeded his authority under G. L. c. 251, § 12(*c*), which limits the court's authority only to the ordering of a rehearing before new, or the same, arbitrators. While it would have been more appropriate for the judge explicitly to vacate the order compelling arbitration, in the narrow circumstances of this case we consider his order to place the case on the trial list as, in effect, a vacation of the arbitration order.

"A written agreement to [arbitrate] shall be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." G. L. c. 251, § 1, as appearing in St. 1991, c. 398, § 96. There is a strong public policy of enforcing arbitration awards. Cf. *O'Brien* v. *Hanover Ins. Co.*, 427 Mass. 194, 200 (1998). Upon determining that the parties have agreed to arbitrate, "the court *shall* order [them] to proceed to arbitration" (emphasis supplied). G. L. c. 251, § 2(*b*). Enforcement of an arbitration award is mandatory, see G. L. c. 251, § 11 ("the court *shall* confirm an award" [emphasis supplied]), unless explicit grounds exist for vacation of the award, including when "the arbitrators . . . refused to hear evidence material to the controversy," G. L. c. 251, § 12(*a*)(4), whereupon the court "shall vacate" the award and "may order

a rehearing before the arbitrators who made the award or their successors appointed in accordance with [G. L. c. 251, § 3]." G. L. c. 251, § 12(*a*), (*c*). In order to read the various sections of c. 251 harmoniously, we conclude that the word "may" (with respect to ordering a rehearing) presents the judge with only two options: remand to the original arbitrators or remand to successor arbitrators, unless the order compelling arbitration is vacated.

In this case, the judge's order restoring the case to the trial list was statutorily unauthorized in the absence of affirmative action on Piva's request for reconsideration of the original orders compelling arbitration. The judge cannot both render Piva's motion for reconsideration moot and also restore the matter for trial — they are mutually exclusive options. The only path to trial of this case would have been to vacate the order compelling arbitration, in effect voiding the arbitration agreement upon a finding of "such grounds as exist at law or in equity for the revocation of any contract," G. L. c. 251, § 1, as appearing in St. 1991, c. 398, § 96, and staying the arbitration (or the severable issues) under G. L. c. 251, § 2(*b*). As long as the arbitration agreement is extant, it is irrevocable, and the matter must proceed, if at all, to arbitration rather than to trial. However, it is clear that the judge effectively vacated the orders compelling arbitration when he restored the case to the trial list. There is no need to remand on the basis of this technical error where the result was obviously what the judge intended and was statutorily authorized to do, and also not erroneous.

The judgment vacating the arbitration award is affirmed.[7] A new order shall enter denying the plaintiffs' petition to compel arbitration.

*So ordered.*

---

[7]As a final comment, we suggest that, where an agreement purports to submit *all* claims for arbitration, a court should not compel arbitration of *all* claims by an arbitrator (e.g., the FAB) who cannot or will not consider *all* claims. If the court finds that the chosen arbitrator will not hear all the claims, then performance of the agreement may be impossible, and the court should render it unenforceable on that basis. In the alternative, upon application by a party, the court may deem the arbitrable matters severable from the nonarbitrable matters, compelling arbitration only as to the issues within the scope of the agreement. See G. L. c. 251, § 2(*b*), (*d*).