## CHARLES SCOTT *vs.* COMMERCE INSURANCE COMPANY.

No. 03-P-717.

Suffolk. June 1, 2004. - November 3, 2004.

Present: GELINAS, BROWN, & BERRY, JJ.

*Arbitration,* Authority of arbitrator, Damages, Award. *Contract,* Insurance. *Insurance,* Motor vehicle personal injury protection benefits, Uninsured motorist.

This court reversed the judgment of the Superior Court confirming an arbitration award in favor of the insured in an insurance coverage dispute, as confirmation of the arbitration award had became moot once the insurance company had tendered full payment of its insurance benefit obligation to the insured. [419-421]

CIVIL ACTION commenced in the Superior Court Department on August 15, 2002.

The case was heard by *Patrick J. King,* J., on motions for judgment on the pleadings.

*John D. Curran* for the defendant.

*Neil S. Cohen* for the plaintiff.

BROWN, J. Commerce Insurance Company (Commerce) appeals a Superior Court judgment that confirmed an arbitration award in favor of its insured, Charles Scott. We conclude it was error to confirm the award and reverse the judgment entered below to that effect.

1. *Background.* On the evening of May 14, 2000, Scott had been jogging in the vicinity of Franklin Park in Boston when he was struck by an unidentified motor vehicle. Apart from his serious injuries, he also incurred medical expenses in excess of $88,000. On June 14, 2000, Scott made claim under his automobile insurance policy issued by Commerce, and sought recovery of personal injury protection (PIP) and uninsured

motorist benefits (G. L. c. 175, § 113L), as well as medical payments arising from the incident.[1]

Upon investigation, Commerce found reason to doubt the veracity of Scott's account of the incident and denied his insurance claim. Because Scott apparently made statements after his hospitalization, which indicated he had been a victim of a violent assault and battery, Commerce was of a view that Scott had changed his story once he was made aware there would be no recovery in the absence of a motor vehicle accident. With the parties at an impasse as to liability, they referred this dispute to an arbitrator, a procedure that was mandated by the insurance contract.[2]

a. *Arbitration.* By written agreement dated August 31, 2001, Scott and Commerce agreed to use the services of a retired judge as the arbitrator. The key issue before the arbitrator was that of liability. Scott maintained he had been the victim of a hit and run motor vehicle accident. In casting doubt as to that claim, Commerce pointed to Scott's own statements, made soon after the event, suggesting (as mentioned above) he had been injured as a result of an assault and robbery.

An arbitration proceeding was held on August 31, 2001. On all the evidence, the arbitrator determined Scott had been "struck by an unidentified motor vehicle after jogging in Franklin Park sometime around midnight on May 14, 2000." The arbitrator found it credible that Scott went out jogging at that late hour to relieve stress resulting from a recent death in his family. Also, the arbitrator deemed it "understandable" that

---

[1]Insurance available to Scott for this incident under his policy was as follows: personal injury protection (PIP), $8,000; bodily injury caused by an uninsured automobile (bodily injury), $20,000 per claimant, $40,000 per accident; and medical payments, $10,000. For interpretation of the phrase "hit and run" used in the automobile insurance context, see, e.g., *Rischitelli* v. *Safety Ins. Co.*, 423 Mass. 703, 706 (1996); *Commerce Ins. Co.* v. *Mendonca*, 57 Mass. App. Ct. 522, 524 & n.3 (2003).

[2]The seventh edition of the standard Massachusetts automobile policy, which is implicated here, provides in pertinent part: "The determination as to whether an injured person is legally entitled to recover damages from the legally responsible owner or operator will be by agreement between us [the insurance company] and the injured person. The amount of damages, if any, will be determined in the same way. Arbitration will be used if no agreement can be reached."

Scott may have initially believed he had been robbed, in light of his injuries and the fact that his money and personal effects were missing.[3] The arbitrator concluded Scott's inconsistent and confused accounts of the events were the product of his trauma and medication. The arbitrator determined Scott was entitled to recover from the hit-and-run driver damages in the amount of $112,600.[4] The parties do not suggest the arbitration decision was anything but final as to the dispute at hand.

After the arbitrator announced his decision and rendered his award, Commerce tendered to Scott's counsel separate checks for payment of insurance benefits amounting to $38,000, the sum total of its liability based on the contract's policy limits.[5] Scott's counsel followed this up with a written demand of Commerce to pay the entire arbitration award, a request that apparently went unheeded.

b. *Superior Court proceedings.* Nearly one year after the arbitration had concluded, Scott commenced an action in Superior Court, seeking an order confirming the award. Commerce opposed that effort and lodged its own counterclaim, alleging the award was invalid to the extent it had exceeded the parties' agreed-to policy limits. Commerce moved to modify the arbitration award along the lines mentioned.[6]

Acting on the parties' cross motions for judgment on the pleadings, a judge found in favor of Scott, ruling Commerce was barred from seeking an order to vacate or modify the award due to its failure to apply for such relief within the time

[3]Scott's car was later recovered parked in the area where he was found injured. Also found at this same location were his wallet, keys, and money.

[4]In his decision, the arbitrator makes no reference to the applicable policy limits, and the parties confirm that he was not so informed of those limits, for reasons not made known to us.

[5]See note 1, *supra.* The record does not disclose the date upon which Commerce tendered the referenced checks to Scott's counsel. The record does reveal Scott's counsel placed the checks for payment of the PIP and medical benefits in escrow, and returned to Commerce a check for payment of the bodily injury claim.

[6]Commerce filed a motion for entry of a judgment consistent with insurance coverage available to Scott under the contract, as well as a motion to correct or modify the award.

prescribed by G. L. c. 251.[7] In denying Commerce's motion, which had been filed more than twelve months after the date of the award's issuance, the judge observed: "If [Commerce's] defenses were of such vital importance to it, [Commerce] nevertheless had an opportunity to raise them in the manner contemplated by statute."

2. *Discussion.* Commerce makes no argument that the arbitration decision or award was tainted by fraud or other procedural irregularity. It does claim, however, that the arbitrator exceeded his authority by awarding damages in excess of the policy limits of the contract. "An arbitrator exceeds his authority by granting relief beyond the scope of the arbitration agreement . . . by awarding relief beyond that which the parties bound themselves . . . or by awarding relief prohibited by law." *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990). See *Lawrence* v. *Falzarano*, 380 Mass. 18, 28 (1980); *School Comm. of Hanover* v. *Hanover Teachers Assn.*, 435 Mass. 736, 740 (2002).

We do not agree the arbitrator exceeded his authority to the extent his decision, and the award rendered by him, is limited to the measure of damages Scott was entitled to recover from the unidentified tortfeasor. Nonetheless, it does not follow that the arbitration award, resolving the liability question in Scott's favor so as to declare that the incident was an insurable event, can be construed as an order compelling Commerce to pay Scott $112,600, which obviously exceeds what Commerce was bound to pay Scott for an insurable accident based on the

---

[7]General Laws c. 251, § 12(*a*), provides specific grounds upon which an aggrieved party may apply for a court order to vacate an arbitration award. That option is open so long as a party files an application in Superior Court under § 12 within thirty days of receipt of the award. G. L. c. 251, § 12(*b*). See *Bernstein* v. *Gramercy Mills, Inc.*, 16 Mass. App. Ct. 403, 407 (1983).

In addition, § 13(*a*) of c. 251 sets forth grounds for modifying an award "[u]pon application made within thirty days after delivery of a copy of the award."

Relatedly, § 11 of c. 251 provides a court "shall confirm an award, *unless within the time limits hereinafter imposed* [as set forth in §§ 12 and 13] grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections twelve and thirteen" (emphasis added).

governing terms and applicable policy limits of the parties' insurance contract.

Mindful of G. L. c. 251's requirements and guided by decisional law interpreting our domestic arbitration statute, we reverse the Superior Court judgment confirming the arbitration award, on the narrow ground that once Commerce tendered the full amount of its insurance benefit obligation to Scott (i.e., $38,000), any action by Scott to confirm the award was moot.[8]

As stated, the arbitration resolved the liability issue (in favor of Scott) and assessed the amount of damages for which the unidentified hit-and-run driver would have been liable (i.e., $112,600). G. L. c. 175, § 111D. See *Aetna Cas. & Sur. Co.* v. *Poirier*, 371 Mass. 257, 259-260 (1976); *Allstate Ins. Co.* v. *Harris*, 26 Mass. App. Ct. 1017, 1019 (1989).

It was not within the arbitrator's authority to take up any question as to coverage under the insurance policy, for that was a matter (absent an explicit agreement by the parties authorizing such) for a court to decide. See *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 87 n.2 (1977); *Spaneas* v. *Travelers Indem. Co.*, 423 Mass. 352, 354 (1996); *M. O'Connor Contr., Inc.* v. *Brockton*, 61 Mass. App. Ct. 278, 282 (2004). "Here, no determination of policy coverage was requested of the arbitrator, or was required to be made by him." *Allstate Ins. Co.* v. *Harris*, 26 Mass. App. Ct. at 1019 (citation omitted).

The arbitrator properly did not (nor was he authorized to) order Commerce to pay the award itself; he simply determined

---

[8]Judicial review of an arbitration decision and award is quite narrow. See *Lawrence* v. *Falzarano*, 380 Mass. at 28-29; *School Comm. of Hanover* v. *Hanover Teachers Assn.*, 435 Mass. at 740; *Connecticut Valley Sanitary Waste Disposal, Inc.* v. *Zielinski*, 436 Mass. 263, 267 (2002). A court may vacate an award upon a showing that the arbitrator has exceeded his authority, or that his decision is tainted by fraud, arbitrary conduct, or procedural irregularity in the hearing. G. L. c. 251, § 12(*a*). See *Marino* v. *Tagaris*, 395 Mass. 397, 400 (1985); *Grobet File Co. of America* v. *RTC Sys., Inc.*, 26 Mass. App. Ct. 132, 135 (1988). It is not enough to show that an arbitrator "has committed an error of law or fact in arriving at his decision, [for] a court will not upset the finding unless there is fraud involved." *Trustees of Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.*, 363 Mass. 386, 390 (1973). See *Lynn* v. *Thompson*, 435 Mass. 54, 61-62 (2001). "To do otherwise would undermine the predictability, certainty, and effectiveness of the arbitral forum that has been voluntarily chosen by the parties." *Marino* v. *Tagaris*, 395 Mass. at 400. Accord *Maltz* v. *Smith Barney, Inc.*, 427 Mass. 560, 563 (1998).

the extent of the uninsured driver's liability for the hit-and-run accident. See *Aetna Cas. & Sur. Co.* v. *Poirier*, 371 Mass. at 259-260; *Royal Indem. Co.* v. *Blakely*, 372 Mass. at 87 n.2. Even though the award was in excess of the applicable policy limits, Scott had no legal right to recover insurance benefits over and above the insurance benefit coverage limits that he and Commerce had agreed to in the contract.

Therefore, by the terms of the arbitration award, Commerce was obligated to provide insurance benefits to Scott, and once Commerce did so by paying Scott the full amount of its policy limits, the parties' dispute (at least as to scope of insurance benefits payable to Scott) was concluded. See *Murphy* v. *National Union Fire Ins. Co.*, 438 Mass. 529, 533 (2003), where the court ruled: "once full payment of the arbitration award was made . . . , confirmation of the award became moot because the obligation owed to the [insured] had been satisfied."

As in *Murphy*, once Commerce had tendered full payment of its insurance benefit obligation to Scott, confirmation of the arbitration award became moot. Though Commerce undoubtedly could have taken some measures in the arbitration process, or in Superior Court, so as to clarify this point and conserve the time and expense of both the court and the parties, Commerce did not waive its right to make the argument by failing to timely commence an action under c. 251 to modify or vacate the arbitration award. The trial court's order and final judgment confirming the award was error.

It follows that the judgment entered below by the Superior Court must be reversed.

*So ordered.*