Gants, Ralph D., J.
The plaintiff, Joseph Vassalluzzo (“Vassalluzzo”), was the Vice Chairman of Staples, Inc. (“Staples”) when the defendant-Ernst & Young LLP (“Ernst & Young”) approached Staples and various of its executives, including Vassalluzzo, to market a tax shelter known as Equity Compensation Solution (“ECS”). In his First Amended Complaint, Vassalluzzo alleges that Ernst & Young told Vas-salluzzo that, with ECS, he could defer the recognition of ordinary income (and, consequently, the payment of taxes on this income) arising from his exercise of stock options and the vesting of restricted stock. Ernst & Young also represented that it would procure opinion letters attesting to the lawfulness of ECS from the defendant Sidley Austin LLP, an international law firm. In reliance on these representations, Vassalluzzo engaged in various ECS transactions in 2000 and 2001 orchestrated by Ernst & Young and supported by opinion letters from Sidley Austin. This tax shelter strategy turned out poorly for Vassalluzzo, since he was audited by the Internal Revenue Service and required to pay roughly $7 million in taxes, penalties, and interest to federal and state tax authorities because of his participation in ECS.
Vassalluzzo did not execute any written agreement with Ernst & Young as to the 2000 ECS transactions. He did, however, execute a written agreement with Ernst & Young, entitled “Engagement Letter,” that was prepared by Ernst & Young on December 13, 2001 as to the ECS transactions planned for that tax year (“the Engagement Letter”). That Letter provided:
Any controversy or claim arising out of or relating to services covered by this letter or hereafter provided by us for you or at your request (including any such matter involving any parent, subsidiary, affiliate, successor in interest, or agent of you or of Ernst & Young LLP, or involving any person or entity for whose benefit the services in question are or were provided), shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the attachment to this letter.
Engagement Letter at 2. Recognizing that the December 2001 ECS transactions were subject to this mandatory arbitration provision, Vassalluzzo did not include in his First Amended Complaint any claim against Ernst & Young for its alleged negligence, fraud, breach of contract, or breach of fiduciary duty as to these transactions, but limited his claims against Ernst & Young to the 2000 ECS transactions, which pre-dated this Engagement Letter.
Sidley Austin was not a signatory to the Engagement Letter, and Vassalluzzo never entered into any separate engagement letter with Sidley Austin. Therefore, Vassalluzzo included claims in its First Amended Complaint against Sidley Austin for its alleged negligence, fraud, breach of contract, and breach of fiduciary duty as to both the 2000 and 2001 ECS transactions.
Sidley Austin now moves to compel arbitration of its dispute with Vassalluzzo as to the 2001 ECS transactions and to stay judicial proceedings until that arbitration is concluded. After hearing, Sidley Austin’s motion to compel arbitration and stay the litigation is DENIED.
DISCUSSION
Sidley Austin admits that, while it worked closely with Ernst & Young with respect to the ECS transactions, its client was Vassalluzzo, not Ernst & Young. In short, Sidley Austin issued the opinion letter to its client — Vassalluzzo; it did not offer its opinion letter to Ernst & Young.
Sidley Austin also admits that, if it did not here seek arbitration, it could not be compelled to arbitrate this dispute with Vassalluzzo, since Sidley Austin never signed the Engagement Letter that mandated arbitration of all disputes. See G.L.c. 251, §1 (“[A] provision in a written contract to submit to arbitration any controversy thereafter arising between the parties shall be valid . . .”) (emphasis added); Mass. Highway Dep’t v. Perini, 444 Mass. 366, 374 (2005) (“arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit”), quoting Local No. 1710, Int’l Ass’n of Fire Fighters v. Chicopee, 430 Mass. 417, 420-21 (1999), which quotes AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643, 648 (1986).
Although Sidley Austin did not enter into an engagement letter or other agreement with Vassalluzzo that mandated arbitration of all disputes, and although Sidley Austin recognizes that it could not contractually be compelled to arbitrate its disputes with Vassalluzzo because it did not execute any arbitration agreement, it still contends that Vassalluzzo is obligated to arbitrate his dispute with Sidley Austin as to the 2001 ECS transactions because of his agreement with Ernst & Young to arbitrate “(a]ny controversy or claim arising out of or relating to services covered by this [Engagement Letter] or hereafter provided by us for you at your request.” Engagement Letter at 2. Sidley Austin appears to recognize that this obligation does not arise contractually, because Sidley Austin was not acting as an agent of Ernst & Young in the ECS transaction and therefore is not bound by the Engagement Letter.[1] Rather, Sidley Austin contends that it may enforce an arbitration provision in an *656 agreement it never executed through the doctrine of equitable estoppel.
Since no reported Massachusetts case has yet determined whether the doctrine of equitable estoppel may be applied to extend the reach of an arbitration agreement to require a signatory to arbitrate a dispute with a party who did not sign that agreement, it is sensible for this Court first to consider what the doctrine of equitable estoppel truly means. In general, equitable estoppel means that it would be unfair for a court to allow a party to do something, so the court prevents (estops) the parly from doing that thing so that fairness (equity) may prevail. By relying on this doctrine, Sidley Austin essentially is contending that it would be unfair for Vassalluzzo, having agreed with Ernst & Young to arbitrate disputes arising out of the 2001 ECS transactions, to be allowed to litigate its related dispute with Sidley Austin arising from these same transactions.
A surprisingly large number of federal courts have applied the doctrine of equitable estoppel in this context. See, e.g., Restoration Pres. Masonry, Inc. v. Grove Europe, 325 F.3d 54, 62 n.2 (1st Cir. 2003) (noting that “[a] number of circuits have allowed a non-signatory to compel arbitration” and citing many of them). After a review of many of these cases, it emerges that different federal courts have taken two differing approaches to this doctrine, which this Court will characterize as “the broad approach” vs. “the narrow approach.” Under the “broad approach,” as articulated by the Second Circuit, “a non-signatoiy to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the ‘relationship among the parties, the contracts they signed ... and the issues that had arisen’ among them discloses that ‘the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.’ ” JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 177 (2d Cir. 2004), quoting Choctaw Generation Ltd. P’ship v. American Home Assurance Co., 271 F.3d 403, 406 (2d Cir. 2001). The “narrow approach” is perhaps best articulated by the United States District Court for the Eastern District of Pennsylvania when it wrote:
The essential question ... is whether Plaintiffs would have an independent right to recover against the non-signatory Defendants even if the contract containing the arbitration clause were void. “The plaintiffs actual dependence on the underlying contract in making out the claim against the non-signatoiy defendant is therefore always the sine qua non of an appropriate situation for applying equitable estoppel.”
Miron v. BDO Seidman, LLP, 342 F.Sup.2d 324, 333 (E.D. Pa. 2004), quoting In re Humana, Inc. Managed Care Litig., 285 F.3d 971, 976 (11th Cir. 2002), rev’d on other grounds sub nom Pacificare Health Sys., Inc. v. Book, 538 U.S. 401 (2003); accord DSMC, Inc. v. Convera Corp., 273 F.Sup.2d 14, 29 (D.D.C. 2002) (quoting same language from Eleventh Circuit).
If this Court were to adopt the “broad approach,” then equitable estoppel would likely be applied here to permit Sidley Austin to compel Vassalluzzo to arbitrate his disputes related to the 2001 ECS transactions because it is plain from the First Amended Complaint that Sidley Austin is alleged to have acted in concert with Ernst & Young with respect to these ECS transactions and the issues Vassalluzzo seeks to resolve are intertwined with the tax advice that Ernst & Young agreed to provide in the Engagement Letter that contained the arbitration agreement. If this Court were to adopt the “narrow approach,” then equitable estoppel plainly should not be applied, because Vassalluzzo would have an independent right to recover against Sidley Austin even if the Engagement Letter were void or had never been written. Indeed, Vassalluzzo alleges the same claims against Sidley Austin with respect to the 2000 ECS transactions, even though these transactions were completed before the Engagement Letter was executed. Vassalluzzo is not alleging here that Sidley Austin’s obligations to him derived in any way from that Engagement Letter. Rather, he contends that Sidley Austin’s obligations to him derive from the common-law obligation of an attorney to his client, and from the implicit contract they entered into separate and apart from the Engagement Letter with Ernst & Young. Therefore, it is essential that this Court determine whether Massachusetts law will adopt the “broad approach,” the “narrow approach,” or some alternative approach to this issue.
This Court is confident that Massachusetts law will adopt the “narrow approach” to equitable estoppel, because that is the approach most consistent with the doctrine of equitable estoppel. If Vassalluzzo had claimed here (which he did not) that Sidley Austin, although not a party to the Engagement Letter, nonetheless had legal obligations arising from the Letter which it breached and which Vassalluzzo was seeking to enforce, then fairness would dictate that Vassalluzzo be bound by any arbitration provision contained in that Letter in his action against Sidley Austin. As one court aptly declared (and others aptly quoted), “The purpose of the doctrine of equitable estoppel ‘is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from rely[ing] on the contract when it works to [his] advantage [by establishing the claim], and repudiat[ing] it when it works to [his] disadvantage [by requiring arbitration].’ ” Denney v. Jenkens & Gilchrist, 412 F.Sup.2d 293, 298 (S.D.N.Y. 2005), quoting In re Humana, Inc. Managed Care Litig., 285 F.3d at 976. The “narrow approach” is focused precisely on preventing a litigant from contending that a non-party has obligations to him under an agreement that contains an arbitration provision and, at the same time, contending that the litigant is not thereby limited to arbitration to enforce these contractual obligations against the non-party. *657 This is the essence of the type of estoppel that is needed to obtain equity.
The “broad approach,” in contrast, is more about judicial efficiency than equity, even though it invokes equity as its justification. When, as here, Vassalluzzo agreed to arbitrate any dispute with Ernst & Young regarding its tax advice concerning the 2001 ECS transactions, but entered into no such agreement with Sidley Austin — the law firm with whom Ernst & Young acted in concert in providing tax advice, it may indeed be inefficient to litigate the related common-law claims of negligence, fraud, and breach of fiduciary duty in both a courtroom and an arbitration hearing room, but it is not unfair to Sidley Austin. The arbitrator’s award with respect to Vassalluzzo’s claims against Ernst & Young can have no collateral estoppel consequence on Vassalluzzo’s claims against Sidley Austin, so Sidley Austin will not be bound by any adverse decision in arbitration. Sidley Austin will still have its day in court, and will be on equal footing with Vassalluzzo in doing so. Vassalluzzo is not “having his cake and eating it, too” because he never agreed to arbitrate any claims against Sidley Austin and does not contend that the Engagement Letter governs his attorney-client relationship with Sidley Austin. Indeed, under the “broad approach,” the only one who would be “having its cake and eating it, too” would be Sidley Austin, which contends that it has the right to require Vas-salluzzo to resolve their dispute through arbitration when it wishes to do so (even though Vassalluzzo never entered into an arbitration agreement with Sidley Austin), but insists that Vassalluzzo could not require Sidley Austin to resolve their dispute through arbitration precisely because Sidley Austin never agreed to arbitration.
This Court well understands the desire of overburdened courts to resolve related disputes in a single forum, especially when that forum will be arbitration, but courts cannot succumb to the temptation of denying a plaintiff his right to a jury trial and to the various safeguards provided by our trial courts (including the right to an appeal on the merits) in its case against one party simply because the plaintiff has agreed to arbitration with another party. Moreover, here, even efficiency would not be served by compelling Vassalluzzo to arbitrate his dispute with Sidley Austin, because Vassalluzzo is plainly entitled to a jury trial on his claims concerning the 2000 ECS transactions, which preceded the execution of the Engagement Letter, and which are likely to be nearly identical to his claims concerning the 2001 ECS transactions. Therefore, unless the parties otherwise agree, this case inevitably will be played out in two forums, regardless of the outcome of this motion.
There is yet another, very important reason why Massachusetts law is likely to reject the “broad approach” and adopt the “narrow approach” to equitable estoppel. As noted earlier, our Supreme Judicial Court has refused to require a party to submit to arbitration when he has not agreed to do so. See, e.g., Mass. Highway Dep’t v. Perini, 444 Mass. at 374. Our Supreme Judicial Court has also found that it has “a responsibility to ensure that arbitration between attorney and client is fair both in its practice and in its perception by the public,” observing that “[o]ur power to inquire more closely in these arbitration proceedings is unquestionably broader than in the typical arbitration case, and is based on our inherent power to regulate the practices of members of the bar and to provide for the proper administration of justice.” Marino v. Tagaris, 395 Mass. 397, 401 (1985). In Marino, the Court vacated an arbitration award regarding a fee dispute between an attorney and his client when the client was not adequately informed “of the nature of the hearing or of her right to challenge the award.” Id. Under the “broad approach” to equitable estoppel, a client may be forced to arbitrate his claims with his attorney when he never agreed to do so, and when he was never informed that, by agreeing to arbitrate his claims with his tax advisor, he was effectively agreeing to arbitrate any related claims with his attorney. There is nothing equitable about requiring a client, without the client’s informed consent, to waive his right to a jury trial and his access to the judicial system when he prosecutes a malpractice claim against his attorney.
Therefore, this Court denies Sidley Austin’s motion to compel Vassalluzzo to arbitrate his claims against it. This Court, in its discretion, also denies Sidley Austin’s motion to stay this litigation until the arbitration with Ernst & Young is completed regarding the 2001 ECS transactions. Unless the parties otherwise agree, these cases may proceed simultaneously in both arbitration and litigation. If the parties agree upon a course of action that will be fair but more efficient than proceeding in two forums, this Court will work with them to accomplish these goals.
ORDER
For the reasons stated above, this Court ORDERS as follows:
1. Defendant Sidley Austin’s motion to compel arbitration is DENIED.
2. Defendant Sidley Austin’s motion to stay this litigation until the arbitration is completed with Ernst & Young regarding the 2001 ECS transactions is also DENIED.

The Engagement Letter mandates arbitration of claims or controversies arising out of services “provided by us for you” (emphasis added), and the “us” refers to Ernst & Young, and “any parent, subsidiary, affiliate, successor in interest, or agent” of Ernst & Young. Sidley Austin is not one of “us” under the Letter.